# CHARLES J. CAREY, Executor, *vs.* HENRY C. REED and Others.

*Removal of Executor—Misconduct—Jurisdiction of Orphans' Court.*

The Orphans' Court has jurisdiction to remove an executor for unfaithful or incompetent administration of the estate.

A few weeks after returning his first inventory of the estate, an executor filed a corrected or amended inventory, in which he charged himself with less than one-half of the amount returned in the first inventory. At the time of filing the second inventory the executor had hypothecated half of the assets to banks as security for loans made to him on his individual account. The will had relieved the executor from the necessity of giving bond. Upon a petition of parties interested, setting forth that the assets of the estate were in danger of being wasted and misappropriated, the Orphans' Court passed an order requiring the executor to furnish a substantial bond for the due performance of his duties within one week. The executor did not comply with the order, but filed an answer denying the authority of the Court. *Held,* that the Court had jurisdiction to revoke the letters testamentary upon proof of the allegations of the petition.

Appeal from an order of the Orphans' Court of Baltimore

City revoking the letters testamentary on the estate of Anna Reed, granted to the appellant, Carey.

The will was offered for probate on or about March 14, 1895. On or about June 11, 1895, the executor returned his inventory of personal estate, under oath, showing that it amounted to $38,960.30, and an inventory of real estate, consisting of one lot of ground and improvements in Baltimore City, valued at $11,000. On July 5, 1895, Charles J. Cary (the executor), made an assignment for the benefit of his creditors to William J. O'Brien. On the next day, July 6, 1895, the said executor, by leave of Court, returned an *amended* inventory in which he states as follows: " In the original inventory filed in this estate on the 11th of June of this year, certain securities were included which were not the property of deceased, and for the purpose of correcting said error this amended inventory is returned." And he then enumerates coupon bonds and stocks and cash amounting to $15,462.46, and swears that it is a true and perfect inventory of all and singular the goods and chattels of the said deceased, &c. On July 22, 1895, the appellees filed their petition in said Court, in said matter, stating that they were legatees under the said will; that the appellant was named as executor, and that he was acting as such with merely nominal bond. That the testatrix was old and inexperienced in business matters, and that the appellant had married her niece and adopted daughter, who was deceased; that he had lived with the testatrix for many years, acting as her confidential agent under a power or powers of attorney; that her property consisted largely of chattels, personal, amounting to about $150,000 ; that immediately after her death the appellant stated to one of the petitioners that her estate would amount to between $120,000 and $130,000; that notwithstanding, the appellant returned to the said Court the inventories hereinbefore referred to and afterwards the said amended inventory; that the appellant was insolvent or pretended to be, and had recently made a deed of trust for the benefit of his creditors, and that he had made

use of the property of the testatrix and squandered it in speculations. And the petitioners prayed that he might be required to give new security in an adequate amount, by a definite time, and failing to do so, that he should be removed and an administrator with the will annexed appointed. Thereupon, on July 22d, 1895, the said Court ordered that the appellant give a new bond, in penalty of $75,000, within a week; provided a copy of the order should be left at his place of business or served on him within three days; and that unless he should give said bond within said period, his letters should be revoked. The copy was served on the appellant on the same day.

On the same day the appellees also filed another petition in the matter, in which they made substantially the same allegation, and alleged that they had reason to believe that the appellant was concealing a part at least of the said testatrix's property, and had not lost it, and that they were apprehensive that more might be lost unless it was withdrawn from his possession, and prayed that he might be required to bring into Court the securities and money mentioned in the *amended* inventory, &c. On the same day the Court ordered that he do so on or before July 25th, 1895.

In appellant's answer he denied the jurisdiction of the Orphans' Court to pass the orders asked for. He admitted that at the time of making her will the property of the testatrix amounted to $87,000, but alleged that before her death she had given away a large part of it, so that the true amount remaining was shown by the second inventory. He also admitted that "he first filed an inventory of personalty to the amount of thirty-three thousand five hundred dollars, and that afterwards he filed an amended or corrected inventory of said estate valued at fourteen thousand nine hundred and fifty dollars, and in explanation thereof, he says that well knowing that the legacies mentioned in the will of said deceased amounted to about thirty-seven thousand five hundred dollars, and that, at the

time of the making of said will the testatrix desired that
said legacies should be fully paid out of her estate, and also
well knowing that the amount of the estate of the deceased
at the time of her death was not sufficient to pay the same,
and inasmuch as he was a debtor to said estate to the
amount of said deficiency, he made a return of personal
estate which he thought would be sufficient to fully pay
said legacies, determining in good faith to make up the de-
ficiency out of his private estate at a time when it would be
necessary for him by law to pay said legacies. That he
took such action and filed said inventory without consulta-
tion with counsel or any other person, and actuated by
what he conceived to be just and right motives, but that
afterwards, on consultation with counsel, and having re-
vealed to counsel the exact condition of his private affairs
and of the estate of the testatrix, he was advised that in
law he could not make up such deficiency for the payment
of said legatees to the detriment and loss of his own cred-
itors, as he was insolvent and unable to pay his debts in
full, and therefore he was advised that it was necessary and
proper for him to make and return the corrected inventory
filed in this Court, which he avers is a true and exact state-
ment of all of the personal estate of the deceased of which
he has any knowledge whatsoever.''

On August 8, 1895, appellant filed a supplemental answer
to the last mentioned petition, wherein he reiterated his de-
nials of the jurisdiction of the Court, but tendered himself
ready to surrender over to the Register all the personal estate
of the testatrix, mentioned in the amended inventory. On
the same day, the date having been previously fixed, the
Court proceeded to take testimony of witnesses, and to a
hearing of the matter of the petitions and answers. There
were three witnesses—the appellees, Henry C. Reed and
Samuel T. Reed, and the appellant, who testified on his own
offer, in his own behalf. Henry C. Reed testified that the
morning after Miss Anna Reed's—the testatrix's—funeral,
he was walking down Charles street with Samuel T. Reed,

and they met the appellant. That the witness asked appellant if he had formed any estimate of the amount of testatrix's estate, and that appellant replied that he had, and it would amount to between $120,000 and $130,000. That witness then asked appellant what Reed Cary's (the residuary legatee's) share would be, and he replied, about $80,000 —and that the legacies amounted to about $40,000—but that he, appellant, did not propose to report to the Orphans' Court more than sufficient to cover the legacies and cost of administration, as he did not propose that Reed should pay collateral inheritance and other taxes. That witness then asked appellant whether he did not know that when he went into Orphans' Court he would have to report under oath the entire estate, to which appellant replied, " that was all right."

It was shown that a few years before her death the testatrix had inherited $153,000.

Appellant was sworn, and testified that he filed the amended inventory, under advice of his counsel, after having obtained leave to do so from the Court. That nine of the bonds included in the amended inventory were not in his possession, but that they had been hypothecated by him with the Eutaw and Provident Savings Banks for loans to him amounting to $8,000, before the death of testatrix ; that the accounts given by Henry C. Reed and Samuel T. Reed, of the statements made by him to them, regarding amount of testatrix's estate, were correct ; that he had made that statement to mislead the appellee, Henry C. Reed, because he knew Henry C. Reed was unfriendly to him, and the estate was in such a condition that appellant could not make a full return as he (Reed) would expect, and that the statement was not a correct one. That he returned the first inventory because he knew testatrix desired the legacies to be paid, and he expected to purchase them out of his own estate, and that the amended inventory contained the exact statement of what she had at her death, after deducting the amount loaned against said bonds.

The Orphans' Court subsequently filed an opinion and

order setting forth that Henry C. Reed, H. Clay Reed and Samuel T. Reed, nephews of Ann Reed, deceased, and legatees under her will, had petitioned the Court to require Charles J. Cary, executor of said will, to give new security sufficient to cover the interests of all parties entitled to the estate; said petitioners alleging that the executor had given only a nominal bond under the Act of 1860, as amended by the Act of 1882. The petitioners relied upon section 41 of Article 93 of the Code of Public General Laws, which provides that only a bond for the payment of debts shall be required of an executor when it is so requested in the will, but also provides that "whenever any heir, distributee, legatee or devisee named in a will shall make it appear to the Orphans' Court that any executor who has given such bond only   *   *   is wasting the assets of the estate, or that the assets of the estate in the hands of such executor are in danger of being lost, wasted or misappropriated, then, and in that case, the Court shall require the said executor to give bond with security in a penalty sufficient to secure the interests of the heirs, distributees, legatees and devisees, and conditioned accordingly; and on his failure to give bond as required by the Court, within a time named by order of Court, his letters testamentary shall be revoked forthwith."

The Orphans' Court held that the evidence showed that the executor had been guilty of improper acts and that therefore they would not require him to give additional bond for the security of the estate, but would remove him from office and appoint an administrator *de bonis non cum testamento annexo* with authority to recover the assets wasted or concealed. The order of the Court concluded as follows: "The executor giving notice of his intention to appeal the case on this order, it is further the opinion of the Court that he be required to give bond for at least $50,000 to protect the estate during the pendency of the appeal. It is therefore ordered and decreed, this 9th day of August, 1895, that the letters of the executor be revoked and that on appeal he be required to give bond to

protect the estate during the pendency of the appeal in the penalty of $100,000."

The cause was argued before ROBINSON, C. J., BRYAN, MC-SHERRY, FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ.

*Wm. J. O'Brien* and *Wm. J. O'Brien, Jr.*, for the appellant.

1. The Orphans' Court has no jurisdiction or authority to hold the appellant responsible for any waste, expenditure or loss of any part of the estate of Anna Reed during her lifetime, even if there was anything in the record to show that he had acted unlawfully; whereas the contrary is fully sustained, both by the answers and the evidence of Charles J. Cary, *i. e.*, that all the expenditures of the estate made by him for his personal use and benefit were made with her approval and authority.

2. There is no evidence of loss of any part of the estate after the death of the testatrix.

3. There is no evidence of concealment—charges made in the petitions filed by the appellees are not proof.

4. There is no evidence of any danger of loss or waste of the estate, the executor having tendered himself ready to deposit the entire personal estate with the Register, and having in fact done so.

5. The Orphans' Court had no jurisdiction or authority to require any further bond of the executor after he had deposited the entire estate with the Register of Wills, except such as might be required to cover a loss of the collections of rent and interest.

6. On the evidence presented, the Orphans' Court could not have required the executor to file any additional bond.

7. The act of the executor in filing the original inventory of personal estate was unquestionably foolish, and, although it was a false inventory in fact, it was not in any sense fraudulent, because it included all the estate in his hands.

8. The order and decree of the Orphans' Court was improvidently passed; first, because there was nothing in the

evidence to justify such an order; and second, because the Court had no jurisdiction to remove the executor. *Code*, Art. 93, secs. 41, 277, 52, 53, 54; *Blumenthal* v. *Moitz*, 76 Md. 566; *Levering* v. *Levering*, 64 Md. 410.

*William A. Fisher* and *D. K. Este Fisher* (with whom was *W. Cabell Bruce* on the brief), for the appellees.

The conduct of the appellant, after letters testamentary were committed to him, in returning to the Court two false inventories, was a flagrant contempt of the Orphans' Court, and though its jurisdiction *is* limited, it had a right to punish and to " make the punishment fit the crime," by removing him altogether as unworthy of the confidence of the Court. Every Court necessarily possesses *inherent* control over its own officers, independent of any specific statutory authority. 1 *American and English Enc. of Law*, page 944, sec. 3; *In re Goodrich*, 79 Ill. 153 (middle;) *Penobscot, &c.* v. *Kimble*, 64 Me. 146 (top.) And though an executor derives his authority from the will, he must obtain his letters testamentary from the Court, and the Court is entitled to judge of his fitness before committing letters to him. No one could doubt that if the unfitness of the party named as an executor were shown before letters were committed to him, the Court would refuse to issue them, and in withholding them, it would be doing no violence to the intention of the testator, for it must be presumed that the testator would not have named a person known to him to be unfit. If the Court possesses the power to withhold letters testamentary from a person shown before they are granted to be unfit, on what principle can it be contended that after they have been committed to him and the Court has become satisfied of his unfitness, it is powerless to revoke them?

Furthermore, the Orphans' Courts have a general power to require new security to be approved by them to be given. (Article 90, section 2.) And under it, the Orphans' Court of Baltimore City had jurisdiction to pass the order of July 22, 1895. By fixing a day for compliance with the

order the Court gave him an opportunity to do what the appellees had a right to require should be done; but the appellant did not comply with this order, but was in default, and to excuse compliance with it, he offered evidence which showed conclusively that it would have been an injustice to the legatees to have given him any further opportunity to wipe out the default and comply with the order. Under these circumstances, the Court was justified in acting upon the default and removing him.

Moreover the Court had express power under Article 93, sections 41, 237 and 230, to revoke the letters.

ROBERTS, J., delivered the opinion of the Court.

This appeal is taken from an order of the Orphans' Court of Baltimore City, passed in the matter of the estate of Anna Reed, deceased, in course of settlement in said Court. The deceased was an aged lady of eighty-six years, possessed of a large estate, and died about March 5th, 1895, leaving a last will and testament, whereby she bequeathed a number of pecuniary legacies to the appellees and others, and left the residue of her property to Charles R. Carey, son of the appellant, and appointed the appellant her executor, excusing him from giving bond. The will was duly probated and letters testamentary granted to the appellant on March 20th, 1895, who gave bond in the penalty of $500. About June 11th, 1895, the appellant, as executor, returned his inventory of the personal property under oath, showing that it amounted to $33,960.30, and an inventory of the real estate valued at $11,000.

On July 5th, 1895, Charles J. Carey (the executor), and appellant, made an assignment for the benefit of his creditors. On the following day, by leave of the Court below, he returned what he alleged to be an amended inventory of the goods and chattels, &c., in which he states, that " In the original inventory filed in this estate on the 11th of June last, certain securities were included which were not the property of deceased, and for the purpose of correcting

said error this amended inventory is returned." He then enumerates in said inventory certain coupon bonds, stocks and cash, amounting to $15,462.46, and swears that it is a true and perfect inventory of all and singular the goods and chattels of said deceased.

After the appellees had become aware of the misconduct of the appellant in his management of the estate of his testatrix on the 22nd of July, 1895, they filed in the Court below a petition setting forth their grievances and praying that he be compelled to give new security, and failing to do so, that his letters be revoked and a new administrator with the will annexed be appointed. On the same day the Court, in compliance with the prayer of this petition, ordered the appellant to give a new bond in the penalty of $75,000 within one week, provided a copy of the order be served on him within three days, and further, that unless he gave said bond within the time limited, his letters should be revoked. The copy was served on the appellant on the same day with the passage of the order. And again, when called upon by certain of the legatees for information concerning the settlement of the estate, he deliberately assured them that the estate would amount to $120,000 or $130,000. When his attention was subsequently called to this statement, he said under oath that he did it to mislead Mr. Reed, one of the appellees, and that the statement was not correct, and he further admitted that the first inventory was not correct, but that the second inventory filed was a correct statement of the personal property belonging to the estate at the time of the death of his testatrix. Whilst this may or may not be true, the assets, in part, making up the second inventory were in a somewhat unfortunate state of deposit, for assets belonging to an estate in course of settlement. As for instance the appellant had hypothecated, with the Eutaw Savings Bank, seven of the bonds mentioned in said second inventory, as collateral security for two loans, which he had personally negotiated with said bank for the total amount of seven thousand dollars, and

deposited with the Provident Savings Bank, for a like pur-
pose, one more of said bonds, for a loan of $1,000, making
a total of $8,000, which he swore to be part of the assets
of said estate, and which were in the hands of the two
banks to secure his individual debts, at the time he returned
his inventory. The appellant answered the last mentioned
petition admitting most of the material allegations contained
therein, but denying the jurisdiction of the Court below to
pass upon the questions at issue therein. We will later on
give attention to these questions.

It is a most remarkable fact, yet strictly in keeping with
the other facts of this case, that the testatrix had scarcely
been deposited in her last resting place, before the appel-
lant had announced his purpose to avoid the payment of
the collateral tax due the State of Maryland, by failing to
report to the Court, the amount due his son, as the residu-
ary legatee, and which the appellant estimated as being
about $80,000. · It is very clear, then, that this appellant
executor had very vague notions as to the binding effect of
an oath, and that when he swore, " to diligently and faith-
fully regard, and well and truly comply with the provisions
of the laws, imposing a tax on commissions allowed to ex-
ecutors and administrators, and of the laws imposing a tax
on collateral inheritance distributive shares, and legacies, to
aid in paying the debts of the State," he seemed to think
that it was his duty as executor to avoid the payment of
such taxes, doubtless for reasons quite apparent in the rec-
ord that he had debts of his own, which required prompt
attention. After the foregoing proceedings were had in the
Court below, testimony was taken, and hearing had of the
matter of the petition of the appellees asking that the appel-
lant be required to give new security, upon the appellees show-
ing, as required by Art. 93, sec. 41, Code, that the appellant
was wasting the assets of the estate, and that the assets of the
estate were in danger of being lost. It can, however, ac-
complish no useful purpose in the determination of this
case, to follow up the further details of the unworthy acts

and doings of the appellant, which clearly indicate his ab-
solute unfitness for the office of executor from which he
has been very properly removed.   The sole question aris-
ing on the testimony in this cause is, had the Orphans'
Court, under the circumstances of this case, authority to
remove the appellant?   If we are to adopt the contention
of the appellant concerning the jurisdiction of Orphans'
Courts as exercised in the determination of the case below,
we would not only be compelled to declare that the Court
was in error in what it did, but that it was shorn of any
jurisdiction to enforce its orders, and decrees based upon
facts fully recognized in the law as peculiarly within the
province of its determination.

When it is said that the Orphans' Courts of this State can
exercise only a special and limited jurisdiction, the Legis-
lature did not say, nor mean to say, that whilst these Courts
may exercise jurisdiction of particular subjects-matter, they
are not, however, authorized to enforce their judgments in
dealing with such subjects.   This, of course, cannot be
true, for it is a necessary incident of the powers of all
Courts, and that too without specific statutory enactment,
that they possess inherent control over their own officers,
and the right to make effective their own judgments, under
circumstances similar to those stated in this case.   Without
extending the argument to unnecessary length, it will be
ascertained from the statement of facts herein, that at the
time of the appellant's removal from the office of executor,
he was before the Court on several charges.   He had on
May 29th, 1895, returned under oath, one inventory in
which he had charged himself with $33,960.30, and on 7th
of July, 1895, he returns, under oath, a second inventory,
which he claims as "corrected," in which he charges him-
self with $15,462.46, less than one-half of the first inven-
tory, and as already stated, more than one-half of the second
inventory was, at the time he swore to the same, hypothe-
cated to secure his individual indebtedness.   Furthermore,
the appellant was, on the 22nd of July, 1895, placed under

an order of the Court below, to give new security by a day named. This he failed to do. In fact, in so far as the duties of his office as executor are involved, he has failed to exhibit in a single instance, wherein he had a just and proper conception of his responsibilities or their proper discharge. It will be found from an examination of the various decisions of other States, construing statutes establishing Orphans' Courts, or Courts of like character, and defining their jurisdiction, to be as *Mr. Schonler* in his Work on Executors and Administrators, § 154, says: "It is perceived that statutes of this character confer upon the Court, and most appropriately too, a broad discretion as to the various instances which may justify removal. Whenever, from any cause, the executor or administrator becomes unable to perform properly the substantial duties of his office, he may be regarded as *evidently unsuitable.* Unsuitableness may be inferred also from wilful misconduct or even from obstinate persistency in a course plainly injurious to the interests of the estate, and impairing its value; and in fact, as a rule, any unfaithful or incompetent administration which will sustain an action on one's probate bond, should be sufficient cause for his removal. Causes of unsuitableness operating at the time of the appointment, but disclosed more fully in the course of administration, and upon experiment, may afford the ground of one's subsequent removal from office; the point here being, not that the insuitableness operated when the appointment was made, but that it operated at the time of the complaint."

The appellees have alleged in their petition, verified by affidavit, that the assets of the estate in the hands of the appellant were in danger of being lost, wasted or misappropriated, and it appearing to the Court that danger did exist, it thereupon passed an order giving him a week to file a substantial bond. He did not comply with this order, but filed an answer denying the jurisdiction of the Court. The Court, without enforcing its order, set a day for the hearing, and the matter of the petition and answer thereto

were heard upon full testimony and argument. Under these circumstances we think the Court below had express authority under Art. 93, sec. 41, of the Code, to revoke his letters, if the proof warranted its action in so doing. In conclusion we entertain no doubt about the correctness of the action of the Court below in removing the appellant from the office of executor, which was done by the passage of its order of August 9th, 1895. The Legislature, by the language of Code, Art 93, section 230, which declares that: "The Court shall have full power  *  *  *  * to secure the rights of orphans and legatees, and administer justice in all matters relative to the affairs of deceased persons," meant to enlarge its discretion and relieve it of a too narrow construction of its powers. So that in *Cox. Ext.* v. *Chalk,* 57 Md. 570, in a case where an executrix was charged with having neglected her duties, &c., the Court said, "that the charges set forth in the petition, if sustained by proof, are sufficient in our opinion to justify the Orphans' Court in removing the appellant from the office of executrix." In that case the proof was not before the Court, but in this case the proof is before us in its most amplified form. For reasons stated we affirm the order of the Court below in removing the appellant from the office of executor of Anna Reed, deceased.

*Order affirmed with costs.*

(Decided January 9th, 1896.)