RANDLE MOALE BELT

*vs.*

HILGEMAN, BRUNDIGE COMPANY.

*Appeal—Printing of Record—Removal of Executor.*

A motion to dismiss the appeal on the ground that appellant did not pay the cost of printing the record within the time required by the rules of the Court of Appeals, and because of "his failure to have the appeal ready for argument," will be overruled, if the record is printed before the appeal is called for argument.                                            p. 129

That an executor failed to state an account within the time prescribed by law, *held* not ground for his removal, there being no evidence that he intended to wrong anyone, and no person having been prejudiced by the delay, and he declaring his willingness to apply the funds in his hands in payment of the funeral expenses and costs of the administration, for which purpose they were barely sufficient, and to state an account.
                                            pp. 134-136

*Decided March 2nd, 1921.*

Appeal from the Orphans' Court of Baltimore County.

The cause was submitted to Boyd, C. J., Briscoe, Thomas, Urner, Stockbridge, Adkins, and Offutt, JJ.

*Frank V. Moale,* for the appellant.

*William L. Henderson* and *Stewart & Pearre,* for the appellees.

Thomas, J., delivered the opinion of the court.

The appellees filed a motion to dismiss the appeal in this case on the ground that the appellant did not pay the cost of printing the record within the time required by the rules of this Court, and because of his "failure to have the appeal ready for argument." This motion was filed on the 18th of

January, 1921, but as the record was printed before the appeal was called for argument on February 1st, 1921, the motion must be overruled.

On the 21st of October, 1920, the appellees, as creditors of the estate of Susan P. Belt, deceased, filed a petition in the Orphans' Court of Baltimore County alleging that letters testamentary were granted to the appellant on the 18th of March, 1919, and that it was the duty of said executor to file an inventory within ninety days from the date of his letters; that notwithstanding the court, on the application of the executor, extended the time for filing the inventory to July 10th, 1919, the inventory was not filed within that time, and that on the 10th of February, 1920, the petitioners filed a petition for his removal, but thereupon the executor obtained an order of the court extending the time for filing the inventory until March 20th, 1920; that on motion of the petitioners said last mentioned order was rescinded, and the court by its order of February 25th, 1920, required the executor to file an inventory on or before March 3rd, 1920; that on the 4th of March, 1920, the executor filed "a paper purporting to comply with said order," from which it appears "that he received from the Safe Deposit and Trust Company and from certain collections of ground rent, and cash in bank, a total of $328.55," but that said paper did not include any household furniture or other personal property of the testatrix; that "without questioning at this time the adequacy of said inventory, * * * it nevertheless became the duty of said executor within twelve months from the date of his appointment and qualification as executor, to file an administration account," and that he had not done so, and had not paid the creditors of the estate. The petition prayed that the letters testamentary granted to the appellant be revoked, etc., and the court passed an order granting the relief prayed unless cause to the contrary be shown on or before the day therein named.

In his answer to said petition, the appellant admitted that the petitioners were creditors of the estate, and that he had

obtained from the court an extension of the time within which to file an inventory, and alleged that the reason he did so was because when he qualified as executor he had no personal property in his hands, and the entire estate of his testatrix consisted of certain unimproved real estate, some of which the testatrix "owned outright," and in some of which she "held merely a bare interest," and her entire interest therein was at that time "heavily mortgaged"; that he did file an inventory on the 9th of July, 1919, and received a receipt for the same, which he filed with his answer; that on March 4th, 1920, "he appeared personally before" the Orphans' Court "and explained the condition of the estate in his hands," which consisted at that time of cash received from the Safe Deposit and Trust Company, "certain collections of ground rent" and cash in bank, amounting to $328.55, but which did not include "any household furniture" because the testatrix "had disposed of all of her personal property of that character during her lifetime"; that the entire personal estate that had come into his hands "up to the time" of filing his answer was included in the inventory filed by him; that while he admits that "under a strict construction of the law" it was his duty to file an administration account within twelve months from the date of his letters, he did not do so because the cash obtained by him from the personal estate was barely sufficient to pay the undertaker's bill, which was a preferred claim, and the cost of administration "thus far incurred by him." The answer denied that he had not taken any steps to close the estate or to pay the creditors, and further alleged that he was then engaged in litigation for the benefit of the creditors, which, if successful, would save the equity which his testatrix was entitled to over and above the debts secured by the mortgages, which had been foreclosed, and that if he did not succeed in said litigation there would be no further assets to come into his hands; that there was no one who had as much knowledge of the business transactions entered into by the testatrix, and that it would be to the best interest of all par-

ties concerned not to disturb him in the administration of the estate.

At the hearing of the petition and answer evidence was taken before the Orphans' Court. The only witness produced by the appellees was the appellant, who exhibited with his answer a receipt dated July 9th, 1919, signed by George Fauth, one of the appraisers of the Orphans' Court, for five dollars, the amount due for "appraisement, inventory and expenses," and who testified that he paid the appraiser for the inventory, and that he promised him that as he was going out to Towson he would file it in Court, but that it was subsequently lost. There was also offered in evidence the inventory filed on the 4th of March, 1920, which the appellant testified showed the entire estate that had come into his hands, amounting to $328.55, and consisting of a number of small amounts received by him from the Safe Deposit and Trust Company, several collections of ground rents, and $1.59, which was in bank at the time of the death of the testatrix. He further testified that out of the funds belonging to the estate he had paid some of the expenses of administration to the amount of about fifty dollars, and that the balance was in the "custody" of his counsel, Mr. Frank B. Moale; that he had not paid the undertaker's bill amounting to $243, because of an understanding between the undertaker and his counsel, who made the arrangements for the funeral of his mother, the testatrix, that he would, if necessary, make some reduction in his bill, and because his counsel had advised him not to pay it until he found out the amount he would have to pay for court expenses, etc.; that his mother gave all her household furniture to his sister, who lived with her, several years before her death, and that all of it had been sold under a mortgage or bill of sale given by his sister; that the reason he had not stated an account was because he had not yet received sufficient funds to pay the undertaker and expenses of administration in full; that he was ready, whenever called on to do so, to pay all the bills as far as the funds in his hands would go, and to render an account; that he had

not been guilty of any dishonesty, or secreted any funds or property of the estate in any manner, and that the only reason that he had not stated an account was because he had "practically in hand only enough to pay the undertaker." Counsel for the petitioners then examined Mr. Moale, counsel for the appellant, without having him sworn, and it appears from his statement that the appellant, with his consent, had the use of a private drawer in his safe in which he placed and kept papers and money, and that he had advised the appellant, owing to his financial troubles, "not to place any money of any kind in any place where it would be liable to attachment until his financial difficulties could be squarely and honestly adjusted." It would also seem from the statements of counsel and evidence in the case that the testatrix was prior to her death engaged in stock transactions; that in order to meet her obligations in that connection she had been compelled to borrow money and to mortgage her property; that a large part of the amount secured by the mortgages represented usurious charges, and that the litigation which the appellant stated he was conducting for the benefit of the creditors of her estate was an effort on his part to recover the amount of such usurious demands.

At the conclusion of the testimony the Orphans' Court, on the 16th of November, 1920, passed the order from which the executor has appealed, revoking his letters, and requiring him to state an account on or before the 26th of that month, and it appears from the account stated in compliance with that order, and contained in the record, that the estate amounted to $328.55; that the costs, expenses of administration and funeral expenses, without any allowance of commissions to the executor, amounted to $336.87, and that the account showed an overpayment by him of $8.32.

The only charges made in the petition of the appellees as grounds for the revocation of the appellant's letters were that he did not file an inventory on or before July 10th, 1919; that he did not, in compliance with the order of the court, file an inventory on or before the 3rd of March, 1920, and

that he had not stated an account within the time required by law. The petition did not charge that the executor had concealed or failed to return any part of the estate, or that he had failed to make a proper deposit of the funds belonging to the estate, and counsel for the executor, relying upon the case of *Pratt* v. *Hill,* 124 Md. 252, objected to the evidence in regard to the household furniture and the deposit of the money belonging to the estate. But in the view we take of the case it is not necessary to pass upon these objections, for assuming that the evidence was admissible, we do not think it was sufficient under all the circumstances of the case to justify a revocation of the appellant's letters. If the appellees had any reason to believe that the executor had concealed any part of the estate of his testatrix they could have proceeded under Section 244 of Article 93 of the Code, and the court, upon a finding in their favor, could have required an additional inventory and compelled the executor to comply with its order, and there can be no doubt of the power of orphans' courts to require executors to deposit in bank the money belonging to the estate. *Code,* Art. 93, Sec. 242.

In regard to the grounds stated in the petition, the appellant testified that an inventory was prepared on the 9th of July, 1919, and that he gave it to one of the appraisers, who promised to file it in the Orphans' Court, but that it was lost, and the receipt filed with his answer, dated July 9th, 1919, purports to be for the cost of an inventory in the estate of his testatrix, Susan P. Belt. But assuming that he was mistaken in regard to that matter, the petition filed by the appellee on the 10th of February, 1920, was not, as alleged in their petition of October 21st, 1920, a petition for his "removal," but a petition praying the court to require him to file an inventory. The court subsequently passed an order requiring him to file an inventory on or before the 20th of March, but, on the application of the petitioners, that order was rescinded, and he was ordered by the court to file the inventory on or before the 3rd of March, 1920, and the inventory was in fact filed on the 4th of March. No objection was

made to this inventory on the ground that it was not a full
and complete inventory, and no further proceedings were had
until the appellees filed their said petition of October 21st
praying that his letters be revoked, *apparently* on the ground
that he had failed to render an account of his administration.
The reason he did not state an account is, as set out in his
answer and stated in his testimony, that he did not have suffi-
cient funds to pay the undertaker's bill and the expenses of
administration, and the evidence indicates that he was wait-
ing and hoping to realize sufficient funds to pay in full out
of the litigation in which he was engaged to recover the
amount of the usurious charges included in the mortgages
referred to.   If we were permitted to consider it on this
appeal, the fact that he did not have sufficient funds for the
purposes stated could be shown by his account subsequently
filed in compliance with the order of the court, and which,
as we have said, is set out in the record.

Sections 1 and 3 of Article 93 of the Code require an
executor to return an account within twelve months from the
date of his letters, and authorize the Orphans' Court to re-
voke his letters for his failure to do so, but, as was said in
*Levering* v. *Levering,* 64 Md. 410, "an executor or adminis-
trator can only be removed for legal and specific causes, and
after citation and an opportunity to be heard in opposition
to the motion."   In this case there is not the slightest evi-
dence that the executor intended to wrong any one, or that
the petitioners and others interested in the estate were in-
jured or prejudiced by his failure to render his account with-
in the time prescribed by law, and in his testimony he de-
clared his willingness to apply the funds in his hands belong-
ing to the estate to the payment of the funeral expenses and
the costs of administration and to render an account.   In the
case of *Snook* v. *Zentmyer,* 90 Md. 706, the present Chief
Judge of this Court said: "The proper exercise of the
powers vested in the Orphans' Courts to remove administra-
tors and executors for failure to perform, or for violating
their duties, may oftentimes be productive of much good in

the administration of estates, but an improvident use of such powers not only does great injustice to the parties directly affected but is calculated to do harm in other ways," and in the recent case of *Stake* v. *Stake, ante* p. 51, where the petitioner sought to have the executor removed because of his failure to account for certain sums of money, aggregating $3,665.62, to which, it was alleged, his testatrix was entitled in the distribution of her mother's estate, JUDGE URNER, speaking for this Court, after referring to the fact that there was no evidence of fraud or collusion on the part of the executor, or that his delay in bringing the administration of the estate to a conclusion had resulted in the loss of any assets for which it was his duty to account, and to his willingness to state a further account under the order and supervision of the court, said: "There was adequate ground for a positive order on the appellee to expedite the final settlement of the estate, but his removal as executor does not appear to have been requisite to protect the interests of the estate, or to have been made clearly necessary by his conduct. Such action could well be regarded as unduly drastic under all the circumstances." In the case at bar the court below very properly required the appellant to render an account of his administration, but we think that under the circumstances disclosed by the record there was no sufficient ground for his removal.

In the cases of *Jones* v. *Jones,* 41 Md. 354; *Levering* v. *Levering, supra;* and *Carey* v. *Reed,* 82 Md. 383, referred to by counsel for the appellees, in which executors and administrators were held to have been properly removed, the facts were entirely different from those with which we have to deal in this case.

For the reasons stated, that part of the order appealed from which required the executor to render an account of his administration must be affirmed, but that part which revoked the letters of the appellant will be reversed.

> *Order affirmed in part and reversed in part, with costs to the appellant, and case remanded.*