MARY L. KERBY *v.* ISABELLE PETERS, ET AL.

[No. 15, January Term, 1937.]

*Decided February 24th, 1937.*

The cause was argued before BOND., C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*George W. Legge,* for the appellant.

*William A. Gunter,* with whom were *Herbert L. Grymes* and *George Henderson* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

Frederick Kerby, Sr., died in Cumberland, Maryland, on May 18th, 1936. On May 22nd, 1936, letters of administration on his estate were granted to Mary L. Kerby, his widow. On June 2nd, 1936, the administratrix filed an inventory of the real estate of her decedent, but has filed no inventory of personalty. On September 11th, 1936, the surviving children of the decedent filed in the Orphans' Court of Allegany County a petition, in which they said that the court should appoint a co-administrator of the estate, and suggested the name of George Henderson, Esq., for that office. On September 22nd, 1936, they filed a written renunciation of their right to administer the estate, and again suggested the name of Mr. Henderson to represent them.

As a basis for those suggestions they alleged in the petition that the appointment of Mary L. Kerby, the widow, was without notice to them, and "that the said Mary L. Kerby, as Administratrix of said estate, has returned an inventory of the personal property of said decedent showing that said decedent at the time of his death was the owner of real estate only and was not the owner of any personal property. That your petitioners are of the belief that said decedent at the time of his death owned certain personal property which the said Administratrix has failed to include in said inventory for the reason that she is making claim to the same as her own." The respondent answered the petition, and, after admitting such matters as were of record, she said, "petitioners have perhaps been misled into believing

4

that respondent is concealing assets belonging to said estate. For the information of this Court and petitioners, a detailed statement of the business affairs of the said Frederick Kerby, Senior, at the time of his death insofar as the same may be of interest to this Court and to said petitioners is filed herewith as a part of these proceedings." Further answering, she denied that she claimed any property other than that which of right belonged to her. In the "statement" there referred to, there is an account of loans and gifts to the decedent's children aggregating $3,674, a reference to certain bank deposits which stood in the joint names of the decedent and his wife, subject to the order of either, balance, if any, payable to the survivor, a deposit with the B. & O. Relief Association in their joint names subject to the order of either, balance, if any, payable to the survivor, to certain furniture claimed by the respondent, to a $2,000 mortgage to the decedent, to certain worthless stock, and a possibility that he owned a bond of the R. M. Hollingshead Company. A hearing was had, testimony taken, and at the conclusion of the case the court revoked the letters of administration theretofore granted to Mrs. Kerby, and then appointed her and George Henderson co-administrators of the estate. From that order she took this appeal.

The only witnesses were Mrs. Kerby, called and sworn for the petitioners, and a Mrs. Mildred Clark Palmer, her sister. The only testimony relating to the allegation that the children had no notice of the application of Mrs. Kerby for letters of administration on her husband's estate was that of Mrs. Kerby, who said that she had informed J. B. Kerby and Kathleen Thomas, two of them, of the appointment immediately after it was made.

The principal purpose of the examination of Mrs. Kerby was to discover the nature and worth of the personal property belonging to the decedent which had come into the possession of the administratrix. In substance it showed that she had collected certain checks drawn to his order and deposited them in bank in an account

which formerly was in the joint names of herself and her husband, but is now her individual account, that she had collected $60 interest on the mortgage and deposited it in the same account; that she had caused the title to an automobile which was in her husband's name at his death to be put in her name; that she had in her possession bonds having a par value of $5,000, which had at one time been in the possession of the decedent. She at the same time testified that the bonds had been given to her by her husband in his lifetime, that the automobile was her own; that she had paid one half of the purchase price for it; that the title was put in his name at the suggestion of one Jutte at the garage (presumably where it was bought) ; and that the garage proprietor had it transferred to her name when she "took the papers up to him" after her husband's death; and that she supposed the moneys payable to the decedent, which she had collected, belonged to her, either because they were for expenses advanced from their joint accounts, or were payable in his lifetime, and if paid then would have been so deposited.

The question presented by the appeal is whether the Orphans' Court acted within its statutory powers in passing the order from which this appeal was taken.

It is apparent that the order passed did two inconsistent and irreconcilable things; First, it revoked the letters of administration theretofore granted to the respondent as the sole administrator of the estate; and, second, it then granted to her letters as co-administrator of the estate. The revocation over her protest of letters originally granted to her could only be justified on the ground that she had been guilty of some default or wrongdoing in the administration of the office, which made her further continuance in it detrimental to the estate. If that was so, it was obviously improper to immediately grant letters to her as a co-administrator of the same estate. If she was unfit because of wrongdoing to administer the estate as sole administrator, she must also have been unfit to administer it as co-administrator.

It is clear, therefore, that the Orphans' Court attempted to do indirectly what it had not the power to do directly, that is, to appoint a co-administrator of the estate without the consent of the person first entitled. The proceeding was highly irregular, and the confusion manifest in the order was the natural result of combining in the same proceeding two distinct and discordant matters.

The petition upon which all subsequent proceedings were based did not suggest that the administrator had been guilty of fraud, but merely that she claimed as her own personal property which the petitioners believed was the property of the estate, and it did not suggest that her letters be revoked, but that a representative of the petitioners be appointed co-administrator with her. In the actual trial of the case the efforts of the petitioners were directed almost entirely to showing that the administrator had concealed or converted assets of the estate, apparently for the purpose of justifying her removal as administrator.

If the purpose of the petitioners was to have the court decide whether property claimed by the administrator was her property or that of the estate, they must have proceeded under Code, art. 93, sec. 253, and, if they succeeded in persuading the court that she had concealed or had in her possession assets of the estate which she had omitted to return in the inventory or list of debts, the court should have required her to make return thereof, and, upon her failure to make such return, have revoked her letters *(Id.)*, but, in the absence of fraud or bad faith, her letters should not have been revoked until she had failed to comply with an order directing her to make return of property determined by the court to be assets of the estate *(Id., Jones v. Harbaugh*, 93 Md. 269, 284, 48 A. 827, 833; *Belt v. Hilgeman, Brundige Co.*, 138 Md. 134, 113 A. 721; *Bagby, Md. Law of Excrs. & Admrs.*, p. 253, ch. 3), and in no event until the court had first determined that the administrator had improperly retained assets of the estate and directed her to account therefor. *Jones v. Harbaugh, supra.* In respect

to that the court in the case last cited said: "The provisions in the Code authorizing the removal of administrators do not contemplate such severe dealings with them. For example, section 239 of article 93 only authorizes the orphans' court to remove an administrator who has even been guilty of concealment of the assets of his decedent, after failure to comply with its order to file an additional inventory or list of debts." Apart from that section, now 253, the orphans' court has no jurisdiction to determine the title to property, for, as said in *Fowler v. Brady*, 110 Md. 204, 208, 73 A. 15, 16: "the orphans' court is a court of limited, and not general, jurisdiction, and can only exercise such jurisdiction as has been expressly conferred upon it by statute. Section 260 of article 93 expressly declares that: 'The orphans' court shall not, under pretext of incidental power or constructive authority, exercise any jurisdiction not expressly conferred by law.' And it has been repeatedly held that the orphans' court has not jurisdiction to determine questions of title to personal property, except under section 253, where a person interested in the estate charges the administrator with concealing or having in his hands the property belonging to the estate which he has omitted to return in the inventory. *Taylor v. Bruscup*, 27 Md. 219; *Gibson v. Cook*, 62 Md. 256; *Daugherty v. Daugherty*, 82 Md. 229, 33 A. 541; *Linthicum v. Polk, supra* [93 Md. 84, 48 A. 842]."

In this case not only did the petition fail to definitely allege that the administrator had concealed assets of the estate, but the court itself failed to determine (1) whether she had concealed assets, or (2) whether the property she claimed was her property or that of the estate, the order failed to require her to account, and was based entirely upon a supposed want of notice of her application for letters of administration.

If the purpose of the appellees was, as it appears to be, to procure the appointment of a co-administrator, the proceeding was premature. Until the respondent's letters had been revoked, the court had no authority to

appoint a co-administrator without her consent .(Code, art. 93, sec. 15), for, as said in *Dorsey v. Dorsey,* 140 Md. 167, 172, 116 A. 915, 916: "Section 15 of article 93 provides that—'Administration may be granted to two or more persons, with the consent of the person first entitled,' etc. When a class of persons is first entitled, the one selected by the court as administrator is the person first entitled under this section. *Kailer v. Kailer,* 92 Md. 147, 150, 48 A. 712."

In respect to the objection that the original grant of letters to the respondent was without notice to the petitioners, who with her formed a class, the members of which were entitled to priority in the right to administer, it is sufficient to say that, by filing their petition for the appointment of a co-administrator, they waived any right they may have had to object to that grant on the ground that they were not notified of respondent's application for such letters (*Dorsey v. Dorsey,* 140 Md. 167, 171, 116 A. 915), for if, notwithstanding the want of notice, they were willing to have the respondent continue as an administrator of the estate, they, the only persons entitled to notice, by that request signified their assent to what had been done.

Much of appellees' argument in this court was directed to a consideration of so much of the evidence as related to the removal of the administrator from the office for improper conduct of its business.

The proceeding was plenary rather than summary. Code, art. 93, secs. 263, 264; *Pegg v. Warford,* 4 Md. 385, 396; *Stonesifer v. Shriver,* 100 Md. 24, 29, 59 A. 139; *Barroll v. Peters,* 20 Md. 172, 176. As distinguished from a summary proceeding, a plenary proceeding is one in which at least some of the formalities of ordinary forensic procedure are observed (49 *C. J.* 1034; *Bouvier's Law Dictionary; Stonesifer v. Shriver, supra; Bagby, Md. Law of Excrs. & Admrs.,* sec. 147), and, while formal pleadings are not required (*Id., McComas v. Wiley,* 132 Md. 406, 409, 104 A. 52; *Hignutt v. Cranor,* 62 Md. 216, 219; *Long v. Long,* 118 Md. 198, 201, 84 A. 375; *Reichard*

*v. Izer*, 95 Md. 451, 463, 52 A. 592; *Strasbaugh v. Dallam*, 93 Md. 712, 714, 50 A. 417; *Munnikhuysen v. Magraw*, 57 Md. 172, 193; *Kealhofer v. Emmert*, 79 Md. 248, 252, 29 A. 68), the proceedings must be conducted in an orderly way. *Bagby, Md. Law of Excrs. & Admrs.*, sec. 147; *Long v. Long, supra; McCambridge v. Walraven*, 88 Md. 378, 383, 41 A. 928. Under any definition of the term, a plenary proceeding implies a complaint, a request for some definite relief, and allegations of fact sufficient to justify the granting of that relief. As stated in *McComas v. Wiley*, 132 Md. 406, 409, 104 A. 52, 53: "A reading of the petition by one not acquainted with the facts would produce an entirely different impression from the events as admitted by counsel to have taken place. Although formal pleadings are not required in proceedings in the orphans' court, the practice in them bears a close analogy to that in courts of equity. No principle is more firmly established there than that if a matter is set out in vague, indefinite, and ambiguous terms, the bill or petition is subject to demurrer." In that case the court affirmed an order sustaining a demurrer, and while, in *Munnikhuysen v. Magraw*, 57 Md. 172, 193, it was said that a demurrer, "technically considered" has no place in orphans' court procedure, the court in *McComas v. Wiley, supra,* obviously considered it as an answer or exception which presented the objection that the petition failed to show facts sufficient to justify the relief prayed. *Bagby, Md. Law of Excrs. & Admrs.*, sec. 148; *Strasbaugh v. Dallam, supra; McCambridge v. Walraven, supra; Hignutt v. Cranor, supra.* So that, while as stated in *Munnikhuysen v. Magraw, supra,* in reference to orphans' court procedure:—"Constituted as those courts are for special purposes only, and composed of judges chiefly laymen, unskilled in the refined and technical distinctions of the law, and selected mainly because of their business capacities, it would sometimes amount to denial of justice if such rules were applied there. Less formal statements are tolerated there; and pleadings are taken in that court to import

what common sense will understand by them, whether they would stand the test or not in another forum, where rigid rules of pleading are enforced," that does not mean that a petitioner seeking relief in that court is relieved of the necessity of alleging facts sufficient to justify it. For it is implicit in this statement from *Baldwin v. Hopkins*, 171 Md. 97, 187 A. 884: "The power of orphans' courts to revoke letters of administrators upon sufficient charges of neglect of duty, etc., supported by proof and upon a proper hearing, is unquestioned. *Wingert v. State*, 125 Md. 536, 542, 94 A. 166; *Carey v. Reed*, 82 Md. 383, 33 A. 633," that, however informally they may be stated, such a petitioner must allege facts sufficient to bring the case within the jurisdiction of the court.

It may be suggested that, since there was no objection to the jurisdiction, the case should be decided upon the proof without consideration of the pleadings. But, assuming that that might be done, which we do not decide, the objection to it is that the pleadings and the proof make out two distinct and different cases and the order is based on neither. But, assuming that it may be so considered, the proof fails to show facts justifying the removal of the administratrix. It does show that she claims as her own property which appellees contend is the property of the estate, but it is neither alleged in the pleadings nor shown by proof that her claim is made in bad faith, and it has been held that the mere fact that an administrator claims as his own property, the title to which may eventually be found to be in him as administrator, is not in itself sufficient ground for his removal (*Bates vv. Revell*, 116 Md. 691, 82 A. 986), but rather presents an issue to be tried under Code, art. 93, sec. 253. *Bowers v. Cook*, 132 Md. 432, 104 A. 420. What was said in *Belt v. Hilgeman, Brundige Co., supra,* and *Dunnigan v. Cummins*, 115 Md. 289, 298, 80 A. 922, 925, applies with some force to the facts of this case. In the latter case it was said: "Without referring in detail to the evidence offered to sustain the charge that the admin-

istrator had concealed certain of the goods, chattels, and money of the estate, or that he had failed to return them as the property of the estate, we will simply say that as to the money this mistake, if a mistake, could have been honestly made in the counting of the money. As to the other property, without mentioning it in detail and without passing upon the fact whether it should or should not have been returned into the estate, it is not shown that the administrator in omitting to return it as the property of the estate was actuated by either fraudulent or dishonest motives. Section 243 of article 93 of the Code provides a remedy in cases where the administrator conceals or omits to return property said to belong to the estate, and this could have been and can still be resorted to."

If the administratrix has in her posession property of the estate which she claims as her own, the title of the estate to it may be established, and she may be compelled to account for it, under Code, art. 93, sec. 253, or, if she has been guilty of misfeasance justifying her removal as administratrix of the estate, that matter can in some appropriate manner be brought to the attention of the court for its action, but, since appellees failed to ask for her removal, and the issue made by the proof is one of title and not of misfeasance, there was also error in removing her as administrator, even if the evidence were to be considered without reference to the pleadings, a question which, as stated above, we do not decide.

It follows that the order appealed from must be reversed and the petition dismissed.

*Order reversed, and petition dismissed, with costs to the appellant.*