CHARLES C. HAAS *v.* MARIE K. REIMERS ET AL.

[No. 17, January Term, 1940.]

*Decided January 25th, 1940.*

The cause was argued before BOND, C. J., OFFUTT, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*Louis J. Jira,* with whom was *George W. Cameron* on the brief, for the appellant.

*Webster S. Blades,* with whom were *Blades & Rosenfeld* on the brief, for the appellees.

JOHNSON, J., delivered the opinion of the Court.

This is an appeal from an order of the Orphans' Court of Baltimore City revoking letters of adminstration previously granted appellant upon the estate of his deceased mother, Louisa Haas. The sole question presented is whether the order was justified under the facts disclosed by the record.

Louisa Haas died December 6th, 1936, intestate, leaving personal estate of approximately $4000, and real estate appraised in excess of $16,000. Her heirs and distributees are the same persons and comprise appellant, a son, his sister Louisa J. Haas Gensler, and six grandchildren of the decedent, children of John M. Walper, a half brother to appellant and Mrs. Gensler.

The order revoking letters was passed after a petition had been filed by the grandchildren showing their relation to decedent, their interest in the estate, the amount thereof, and alleging certain acts of misfeasance on the part of appellant, (a) in not accounting for rental of the property occupied by decedent in her lifetime, although, since her death, he, Mrs. Gensler, and the husband of the latter, had occupied said premises; (b) that, although letters of administration were granted appellant on December 24th, 1936, he had from that time on been trifling with the court in delaying final distribution of the personal estate, reference being made to the docket entries of the court from March 30th, 1937, and to June 2nd, 1939, at which time, although previously cited to file his account, he secured a further extension to file a first account three days later, and a second account on July 24th; (c) that the administrator, in delaying distribution of the personal estate, had acted largely upon the advice and under the control of Gensler, his brother-in-law, who had some familiarity with legal matters, and both of them were attempting to deprive the petitioners of their interests in the estate by having Mrs. Gensler, appellant's sister, on June 22nd, 1939, institute suit against the administrator in the Superior Court of Baltimore City for a sum in excess of $10,000 on an alleged claim for nursing and attending to her mother for a period of nineteen and one-half years, beginning June 2nd, 1907, and ending December 6th, 1936, the date of the mother's death; that the suit was unjust and without any merit, but was filed at the instance of Gensler with the connivance of the administrator, and, if permitted to remain as administrator of the estate, Haas would not properly defend the suit, but would suffer a judgment to be rendered against the estate, depriving petitioners of their entire interest in the personalty and a substantial portion of their interest in the real estate.

Upon that petition the Orphans' Court passed an order *nisi* that Haas show cause on or before July 21st, 1939, why the prayer of the petition should not be granted,

but his answer was not filed until August 11th. In that answer he admited that he, his sister and her husband were occupying the premises in which his mother formerly lived, but stated that at the proper time they would account and pay rent therefor, and, although he did not specifically deny that he connived at the suit of his sister, he asserted that he was defending it and would defend it faithfully and to the best interests and advantage of all concerned in his mother's estate, and further asserted that the estate had been administered and cared for in a faithful, competent, and careful manner.

On June 29th, 1907, Mrs. Haas, the decedent, was adjudged an incompetent and her son, Charles C. Haas, was by the Circuit Court No. 2 of Baltimore City appointed as committee of her person and estate. This he administered until her death, but throughout the period he and Mr. and Mrs. Gensler lived in the home with Mrs. Haas, Mrs. Gensler acting as housekeeper; moreover, since his mother's death, appellant and Mr. and Mrs. Gensler have continued to live in the house practically as one family.

Haas, as committee, filed accounts in the equity court, claiming and receiving allowances for expenses incident to his mother's care and attention, and all of those accounts seem to have been prepared by Gensler, the brother-in-law. In an account filed December 4th, 1933, it was shown that Mrs. Gensler was allowed $1910.97 for board, nursing and medicine from September 1st, 1931, to June 30th, 1933.

Haas admitted that in June, 1937, his brother-in-law informed him a claim was to be filed for Mrs. Gensler against the estate, also that later, in a petition to be allowed to pay the funeral bill, he stated under oath that the "approximate value" of the whole estate was $19,900, "with no outstanding debts to be paid." He attempted to explain that by saying he did not then know if his sister's efforts at collecting her claim would terminate successfully to her.

When sued by Mrs. Gensler, appellant employed counsel, who filed general issue pleas to the declarations. At the hearing in the Orphans' Court he was interrogated as to whether he had instructed counsel to plead limitations. He finally answered that inquiry in the affirmative, basing his conclusion that his sister's claim should not be paid upon the ground that to pay it would cut down his own interest in the estate.

While of course appellant was not to be deprived of letters for failure to file inventories and accounts after the court that granted him letters excused him from filing such inventories and accounts, it does not follow that under Code, art. 93, sec. 100, he was justified in failing to plead limitations to the present suit, which he himself testified he regarded as unjust. And certainly he cannot complain if his statement that he had instructed his attorney to plead limitations was not believed by the court. These considerations are sufficient, not only to demonstrate his incompetence and neglect of duty, which are further emphasized when it is recalled that, after securing a further extension to July 24th, to file a second account, his sister's suit was filed on June 22nd. In view of appellant's long-continued neglect of his official duties, the fact that the court had repeatedly found it necessary to cite him for failure to file accounts and inventories, his vague and evasive testimony upon interrogation concerning the Gensler claim, and his relation and friendly intimacy with the claimant and her husband, there was sufficient to justify the conclusion of the Orphans' Court that he was not a proper person to administer the estate.

In *Jones v. Jones*, 41 Md. 354, at page 360, it was held that "the Orphans' Court had authority to revoke the letters, and it is to be presumed, in the absence of evidence to the contrary, that the court faithfully discharged its duty, and properly exercised its power of removal."

And it cannot be questioned that the orphans' court has ample power to revoke letters upon a proper showing of incompetency or neglect. Code, art. 93, sec. 3; *Kerby*

*v. Peters*, 172 Md. 1, at page 10, 190 A. 511; *Baldwin v. Hopkins*, 171 Md. 97, 187 A. 884; *Stake v. Stake*, 138 Md. 51, at page 54, 113 A. 591; *Fulford v. Fulford*, 153 Md. 81, at page 92, 137 A. 487; *Biddison v. Mosely*, 57 Md. 89, at page 93; *Levering v. Levering*, 64 Md. 399, at page 410, 2 A. 1.

On the record, the order appealed from was entirely proper and must be affirmed.

*Order affirmed, with costs to appellees.*