# WHEATLEY, Executor *v.* FLEISCHMANN, ADMINISTRATOR

[No. 159, September Term, 1957.]

*Decided March 26, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*L. Robert Evans* and *Bennett B. Cockey,* with whom was *James B. Wheatley, pro se,* on the brief, for the appellant.

*A. Frederick Taylor,* with whom were *Smalkin, Hessian, Martin & Taylor* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

On March 6, 1947, the appellant, James B. Wheatley, was granted letters testamentary in the estate of Carroll Stepp, deceased. On March 6, 1956, nine years later, the letters were revoked and the appellant-executor removed for cause by the Orphans' Court of Baltimore County. From this decision of the Orphans' Court, the executor appealed, under the provisions of Article 5, section 69 of the Code (1951), to the Circuit Court for Baltimore County, and, after extensive testimony had been taken on the trial *de novo* as provided by the statute, the Circuit Court affirmed the action of the Orphans' Court. The executor appeals from this action by the Circuit Court.

On March 1, 1947, Carroll Stepp died leaving a last will and testament which appointed the appellant executor of his estate. The will was probated on March 6, 1947, and letters testamentary were issued to the appellant on that date. For the purposes of this opinion, the provisions of the will need not be set forth in detail. It will suffice to say that he left both real and personal property; and the will directed the executor to make sale of the real estate, and provided for the distribution of the proceeds.

Without authority from the Orphans' Court and contrary to the instructions in the will to sell the property and divide the proceeds, the appellant rented out a beer tavern and

other real estate owned by the deceased. He and his son collected the rents from these properties, the son receiving 10% of those collected by him. He, also without the authority of the court, made substantial expenditures for improvements on the properties. He kept no records, but relied entirely on the meagre records made by his son with reference to receipts from rentals. What money came into the estate, he put in his pockets; whenever debts had to be paid, the money was taken from that source. He opened no bank account, and testified, if any of the estate's money were deposited by him in the bank, it went into his personal account and was commingled with his own funds. The record discloses that the appellant seemed to regard the estate as his personal enterprise, and he, apparently, was under the impression that no one had the right to call upon him as a fiduciary to account for his receipts and disbursements.

When the appellant failed to account within the time required by law, the court, on several occasions, granted him extensions of time. However, it became obvious that he was not taking the extensions seriously, and, on May 9, 1949, he was cited by the court and ordered to state an account and close the estate. About this time, his counsel petitioned the court to relieve him (the counsel) of any association with or responsibility for the estate, because "his (the executor's) acts of commission and omission have been against or without the advice or consent of your petitioner." This petition was granted. The executor was again cited by the court on September 28, 1949, and ordered to state an account and close the estate.

We do not deem it necessary to relate all of the details of the appellant's conduct that followed. He failed to file an account, and continued on the same course as stated above. In 1952, he sold most, if not all, of the real estate at public auction. When this case was argued here, the son of the executor had purchased every parcel of real estate that could be sold by the estate. On April 20, 1955, eight years after his appointment, the executor still had not filed his first account, so the court again cited him. On May 2, 1955, he filed his first account, in which he charged himself with

$29,816.82 in assets. The court refused its approval of this account, and on May 31, 1955, he filed another "first" account in which he stated the assets as $40,917.82. Both of these accounts, however, only covered a period ending in September, 1951. He was finally cited on February 9, 1956, and ordered to close the estate by filing his account on or before March 1, 1956. He failed to file the account, nor did he file an answer of any kind to the citation, stating why such account was not filed by March 1. On March 1, 1956, the appellant and counsel ·appeared before the court, and stated they were not prepared to file the account, but attempted orally to give as an excuse the fact that there had been a dispute over the payment of certain taxes which had not been settled. The court informed them the account would have to be filed that day. On March 6, 1956, the court passed an order revoking the appellant's letters testamentary, and, from this order, the appellant appealed to the Circuit Court, where, in accordance with the statute, a full and complete trial was had *de novo,* and the order of the Orphans' Court affirmed.

I

The appellant claims that he was improperly removed as executor by the court. There can be no doubt that the Orphans' Court, upon a proper showing of neglect, incompetence or persistent disobedience of the court's lawful orders, may revoke an executor's letters testamentary and appoint another personal representative of the estate. Article 93 (Code 1957), sections 259, 277, 285; *Jones v. Jones,* 41 Md. 354, 360; *Carey v. Reed,* 82 Md. 383, 394, 33 A. 633; *Tsaracklis v. Characklis,* 176 Md. 28, 34, 3 A. 2d 725; *Haas v. Reimers,* 177 Md. 567, 571, 10 A. 2d 705. The right to administer, however, is a valuable one; consequently, an executor or administrator will not be removed except for legal causes, and after citation and an opportunity to be heard, *Fulford v. Fulford,* 153 Md. 81, 137 A. 487.

In Maryland, the trust confided to an executor is clearly defined by his letters testamentary, which is the commission or instrument under which he acts, and our statutes prescribe in detail the mode in which his trust is to be performed. His

office is in the nature of a trustee for the creditors, legatees and next-of-kin of the deceased, and he is required to preserve the property of the estate apart from his own, earmarked. The principle is firmly established that an executor is bound to keep clear, distinct and accurate accounts, and render them whenever legally demandable. The *onus* is upon him to show how the estate entrusted to him has been administered; and the law imposes upon him the duty to protect the estate under his care. *Bagby, Maryland Law of Executors and Administrators* (1927 Ed.), p. 241.

Judge Day said of the conduct of the executor involved here:

> "The testimony taken in open Court clearly supports the findings set forth in the Order passed by the Orphans' Court on March 6, 1956. The executor not only failed to carry out the directions of the will but conducted the entire administration of the estate in a very unorthodox and unbusinesslike manner. He failed to keep proper books and records to show receipts and disbursements, to properly earmark the funds belonging to the estate, and to obtain orders of the Orphans' Court where such orders were necessary to properly administer the estate. In fact, the entire conduct of the Executor indicated an utter disregard, if not flagrant contempt, for the authority of said Court.

> "James B. Wheatley was appointed executor of the estate of Carroll Stepp on March 6, 1947; yet on March 1, 1956, nine years later, the estate had not been closed although the Orphans' Court had directed him to do so four times. In the meantime he proceeded to rent valuable property belonging to the estate and transacted other important business as executor without authority from the Orphans' Court. Although during this period, he collected and disbursed substantial sums of money belonging to the estate, he opened no bank account as executor; according to his own testimony, he carried the money around in his pockets. He employed his son to col-

lect the rents due the estate at commissions of ten percent without order of court and all the real estate of the deceased which was to be sold under the terms of the will was sold to the son."

In order to reverse these findings of the judge, we would be required to find that he was clearly erroneous in all, or a part, of them. Maryland Rule 886. This, indeed, would be most unusual in this case; because nearly all of such findings, except his "disregard" and "contempt" for the authority of the court, were admitted and testified to by the appellant. However, we agree with Judge Day and think the record discloses that, in so far as the duties of his office as executor are involved, the appellant has failed to exhibit, in a single instance, wherein he had a just and proper conception of his responsibilities or their proper discharge.

II

The appellant raises one other point that is difficult to state with clarity and certainty due to the manner in which it is expressed in his brief. Apparently he contends that a proceeding for the removal of an executor is plenary in nature rather than summary; that a plenary proceeding requires the filing of a complaint or petition; and, as no complaint or petition was filed in this case, the executor was improperly removed.

The distinction between plenary and summary proceedings in the Orphans' Courts is clear. The test of plenary proceedings is whether a written petition, complaint or citation is filed and the party against whom it is filed appears and answers. Summary proceedings are those without written petition, complaint or citation and answer. *Cannon v. Crook*, 32 Md. 482, 484; *Bowling v. Estep*, 56 Md. 564, 566; *Kerby v. Peters*, 172 Md. 1, 8, 9, 190 A. 511; *Barton v. Tabler*, 183 Md. 227, 232, 233, 37 A. 2d 266. Unquestionably where proceedings are instituted under Article 93, section 3 of the Code (1951) for the removal of an executor, plenary proceedings are anticipated, because the statute provides such proceedings shall be had "on application of any person interested." *Fulford v. Fulford, supra*, 153 Md. 91, 92, 93, *Haas*

*v. Reiners, supra,* 177 Md. 569, 570; but under such sections as 233 and 282, where the court may act *ex officio,* the proceedings may be either plenary or summary, depending upon whether or not the respondent appears and answers. For instance, in the present case, if the appellant had filed an answer to the citation and requested the court for a hearing, the proceeding would have been plenary; however, he chose not to file an answer, and the proceeding was summary. *Barton v. Tabler, supra,* 183 Md. 232, 233.

In the instant case, however, whether the proceedings were plenary or summary, an appeal was taken by the appellant under the provisions of Article 5, section 69 (Code 1951) to the Circuit Court. This right was explicitly given to him by the statute. In the Circuit Court, as provided by said statute, a trial *de novo* was held, and the issues between the parties were thoroughly considered and decided. No objection was raised in that court or here as to the nature of those issues. The testimony offered was transcribed and a full record was presented to this Court. There is nothing in this record, as it now stands, that would avail the appellant to warrant a reversal of the order of the trial court.

Having arrived at the above conclusion, it becomes unnecessary to consider the other question raised by the appellee.

*Order affirmed, with costs.*