857 A.2d 1235

Marion K. McINTYRE, et al.

v.

Patricia K. SMYTH, et al., Administrators of the Estate of Marion I. Knott.

No. 1928, Sept. Term, 2003.

Court of Special Appeals of Maryland.

Sept. 17, 2004.

20

Allan J. Gibber (Thomas M. Wood, IV, Michaela L. Cavanaugh, Neuberger, Quinn, Gielen, Rubin & Gibber, PA, on brief), Baltimore, for appellant.

Michael Schatzow (Jeffrey K. Gonya, Mark D. Maneche, Venable, LLP, on brief), Baltimore, for appellee.

Panel MURPHY, C.J., KRAUSER, THEODORE G. BLOOM, (Retired, specially assigned), JJ.

KRAUSER, J.

When Marion I. Knott died, her Last Will and Testament named, as personal representatives of her estate, two of her children, appellees Patricia K. Smyth[1] and Francis X. Knott, and, among other things, left her "tangible personal property" to her ten surviving children. In dispute is the fate of that property and its implications for the standing of the decedent's other children to request judicial probate. If, as appellees

---

[1]. In the Will, she is referred to as "Mary Patricia Knott Smith," but, in this case, she is referred to, by both sides, as "Patricia K. Smith." To avoid confusion, we shall use the latter name whenever we refer to her.

Smyth and Knott contend, that property was adeemed, before her death, appellants, who comprise six of the decedent's eight other children, had no standing to file a petition for judicial probate, and the decision of the orphans' court, dismissing that petition on those grounds, must be affirmed. But if, as appellants claim, the ademption of that property was in dispute at the time that their petition was dismissed, then appellants did have standing, and the orphans' court erred in dismissing their petition for judicial probate.

This matter commenced when, upon Mrs. Knott's death, appellees Smyth and Knott filed a petition for administration of a small estate, together with the decedent's Will and First Codicil (collectively, the "Will"),[2] with the Register of Wills for Baltimore City. The only asset of the estate, according to the petition, was a bank account, containing a little less than $13,000. No tangible personal property was listed. After admitting the Will to probate and appointing appellees, Smyth and Knott, as personal representatives of the estate, the register of wills sent notice of the appointment to all "interested persons."

In response to that notice, seven of decedent's other children: Martin G. Knott, Sr.[3] and appellants Marion Knott McIntyre, Alice K. Voelkel, Margaret K. Riehl, Mary Stuart K. Rodgers, Sarah Lindsay K. Harris, and Rose Marie Porter, filed a petition for judicial probate in the Orphans' Court for Baltimore City, requesting, among other things, a plenary hearing and the appointment of an independent personal representative to conduct an investigation into whether the actions purportedly taken by the decedent or by others on her

---

**2.** The First Codicil directed the decedents' personal representatives to carry out the terms of the Knott Family Limited Partnership agreement and to sell her interest in the Partnership to the Partnership or its individual partners, "for fair market value with the sale proceeds" to be distributed as part of her residuary estate.

**3.** Martin G. Knott, Sr., one of Decedent's children, also joined in the petition. He is not, however, a party to this appeal.

behalf or on behalf of her estate "were in accord with her intent."

Appellees filed a response to that petition, requesting that the orphans' court dismiss appellants' petition and re-appoint them as personal representatives, as their administrative appointment ended, in accordance with ET § 6–307,[4] when appellants filed their Petition for Judicial Probate. That response was followed by a motion to dismiss appellants' petition for judicial probate, in which appellees, for the first time, sought dismissal on the grounds that appellants were no longer "interested persons" under the Will and therefore, under Maryland law, lacked standing to request judicial probate. The orphans' court agreed, granted appellees' motion, and dismissed appellants' petition for judicial probate.

Challenging that ruling, appellants present two issues for our review. Reordered, they are:

I. Whether the orphans' court erred when it held that appellants did not qualify as heirs under the definition of "interested persons" as set forth in section 1–101(i)(4) of the Estates and Trusts Article and as a result did not have standing to file the Petition for Judicial Probate.

II. Whether the orphans' court erred when it held that appellants did not qualify as legatees under the definition of "interested persons," as set forth in section 1–

---

4. ET § 6–307 provides:

(a)(1) The appointment of a personal representative who has been appointed by administrative probate is terminated by a timely request for judicial probate.

(2) The validity of an act performed by the person as personal representative is not affected by this termination.

(b) Subject to an order in the proceeding for judicial probate, a personal representative appointed previously has the powers and duties of a special administrator until the appointment of a personal representative in the judicial probate proceeding.

(c) A person, whose appointment as a personal representative is terminated by a request for judicial probate, may be reappointed.

(d) The appointment of a personal representative is reinstated on a dismissal or withdrawal of a request for judicial probate.

101(i)(3) of the Estates and Trusts Article and as a result did not have standing to file the Petition for Judicial Probate.

For the reasons that follow, we shall vacate the judgment of the orphans' court and remand this matter to that court for further proceedings consistent with this opinion.

## BACKGROUND

Marion I. Knott, a Baltimore City resident, died testate on April 15, 2003. Before her death, in 1994, she executed both the will at issue and a power of attorney authorizing Patricia K. Smyth and Patricia's now-deceased brother, Henry J. Knott, Jr., to create a revocable trust on the decedent's behalf. According to appellants, the decedent was to be the sole beneficiary of that trust, and upon her death, the assets were to be payable to her estate.[5]

In her Will, the decedent left all of her "tangible personal property" to her surviving children. The property included her "furniture and furnishings, household and personal effects," and was to be divided "among them in shares nearly equal in value as practicable." She left the balance of her estate to the Marion I. and Henry J. Knott Foundation, Inc. (the "Foundation")[6] and named two of her children, Henry J. Knott, Jr. and Patricia K. Smyth, as the personal representatives of her estate. She further provided in her Will that if Henry J. Knott, Jr. were to predecease her that Francis X. Knott was to serve as co-personal representative in his place.

---

**5.** This information was presented in the parties' briefs and appellees' motion to dismiss and appellants' response to that motion. There is, however, no copy of the revocable trust in the record, nor any documentation that the decedent granted power of attorney to Smyth and Henry J. Knott, Jr.

**6.** The Will stated that the decedent's residuary estate was to go to her late husband, Henry J. Knott, in the event that he survived her. He did not, and, under the terms of the will, her residuary estate passed instead to the Foundation.

Shortly after Decedent's death, appellees Smyth and Francis Knott (Henry J. Knott, Jr. having passed away) filed a petition, requesting administrative probate of a small estate, with the Register of Wills for Baltimore City. The decedent's estate qualified as a small estate, they claimed, because its only estate asset was a checking account containing $12,344. In that petition, they also requested that they be appointed, in accordance with the terms of the Will, personal representatives of the estate.

After admitting the Will to administrative probate and appointing Smyth and Knott as personal representatives of the estate, the register of wills published, in a newspaper of general circulation, as required by Md.Code (1974, 2001 Repl. Vol.), § 7-103 of the Estates and Trusts Article ("ET"), notice of the appointment of appellees as personal representatives and sent a copy of that notice, as required by ET § 2-210, to appellants, as "interested persons" under ET § 1-101(i). In response to that notice, appellants, as "interested persons," filed a petition for judicial probate in the Orphans Court for Baltimore City.

Appellants' judicial probate petition requested "the appointment of an independent person selected by the Court to serve as Personal Representative of the Estate for purposes of conducting an independent investigation to assure that all actions taken by or on behalf of the Decedent, during her lifetime and on behalf of her estate, after her death, were in accord with her intent, without violation of a confidential relationship and without self-dealing or other conflict." The petition also "demand[ed] a plenary hearing to determine testamentary capacity of the decedent, the validity and proper execution of the Will and Codicil, and for the appointment of an independent Personal Representative."

After filing their petition for judicial probate, appellants sent appellees interrogatories and requests for production of documents, seeking information regarding the decedent's testamentary capacity; her execution of the will; the assets of her estate, including her tangible personal property; her

revocable trust; and any "gift, distribution, transfer, exchange, [or] other disposition of any type" that appellees received from the decedent before her death. When appellees failed to respond to those requests, appellants moved for sanctions.

Before the orphans' court ruled on that motion, appellees filed a response to appellants' petition, challenging its propriety, and, shortly after that, a motion to dismiss, disputing appellants' standing to request judicial probate. The orphans' court granted that motion, stating, in a written opinion, that appellants had "failed to show that they [were] Interested Parties to the Estate" and "thus that they ha[d] standing to bring the Petition for Judicial Probate." It then dismissed appellants' petition and upheld the register's order admitting the decedent's Will to administrative probate and appointing Smyth and Knott as personal representatives.

## DISCUSSION

Appellants contend that the orphans' court erred in granting appellees' motion to dismiss their petition for judicial probate on the grounds that they were not "interested persons," as either heirs or legatees, and therefore, did not have standing to file a petition for judicial probate. Although appellees designated their motion as a "motion to dismiss," and the orphans court not only accepted that designation but then "dismissed" appellants' petition, the question arises whether the court's references to facts, which did not appear in any of the pleadings filed by the parties, transformed its disposition of appellants' petition from a dismissal to a grant of summary judgment. If it did, that would, of course, affect the standard of review we apply and, in this instance, the result we reach.

### Standard of Review

Initially, we note that, under the Maryland rules, the orphans' court has the authority to dismiss a petition for judicial probate for failing to state a claim upon which relief can be granted, in accordance with Rules 2–322(b)(2) and 6–461(d), or to grant summary judgment, in accordance with Rules 2–501

and 6–461(b). Appellees chose to seek a dismissal of appellants' petition under Rule 2–322(b). Claiming that appellants had no standing to request judicial probate, appellees asked the orphans' court to dismiss appellants' petition. The court granted that request and dismissed the petition.

In so ruling, the court relied on unsworn representations in appellees' motion to dismiss that the "tangible personal property" that appellants were to inherit as legatees under the Will, had been transferred by the decedent, before her death, to the revocable trust established for her by appellees. Concluding that appellants' only interest in the estate—the decedent's tangible personal property—had been adeemed, the court dismissed appellants' petition for lack of standing, without apparently considering appellants' contrary claim that the property had never been transferred to the trust.

Asking this Court to nonetheless affirm the orphans' court's ruling, appellees argue that it was entirely appropriate for that court, in granting their motion to dismiss, to go beyond the four corners of the petition for judicial probate and to consider extra-pleading sources. Relying on certain federal decisions, *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir.1999); *Parrino v. FHP, Inc.* 146 F.3d 699, 706 (9th Cir.1998); *Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir.1993), they assert that "it is widely recognized that where, as here, the initial pleading references a document that is integral to that initial pleading, a court may consider that document within the context of a motion to dismiss, even if the document is not attached to the pleading."

We agree that the court may consider such a document but disagree that such consideration may be done within the context of a motion to dismiss. While a court does indeed have the discretion to consider matters beyond the four corners of a complaint, when it does, it "transmute[s] the motion to dismiss to a motion for summary judgment." *Hrehorovich v. Harbor Hosp. Ctr., Inc.*, 93 Md.App. 772, 789, 614 A.2d 1021 (1992).

In *Hrehorovich*, Dr. Hrehorovich, a former member of Harbor Hospital's medical staff, filed a complaint against the

hospital, alleging, among other things, breach of contract and wrongful discharge. *Id.* at 778, 614 A.2d 1021. In that complaint, he referred to specific provisions of the "Medical Staff Bylaws" and the "Employee Policy Manual." *Id.* at 779, 614 A.2d 1021. In response, Harbor Hospital filed a motion to dismiss the complaint, citing other provisions in those documents. *Id.* at 779–80, 614 A.2d 1021. When the circuit court granted that motion, *id.* at 778, 614 A.2d 1021, Hrehorovich noted an appeal, arguing, among other things, that, in granting the hospital's motion to dismiss, the circuit court erred in relying on "the facts set forth by appellees that went beyond [his] complaint." *Id.* at 779, 614 A.2d 1021. "[S]uch consideration," he maintained, "is not proper for a motion to dismiss." *Id.* at 780, 614 A.2d 1021.

The hospital, on the other hand, argued, as appellees do now, that "the trial court could properly examine the documents that form the basis for appellant's complaint." *Id.* "[T]hey had the right," the hospital insisted, "to 'complete' the pleading by providing additional portions of the documents relied on by [Hrehorovich]." *Id.* We rejected that reasoning but not the right of the court to consider documents outside of the pleadings.

Citing Maryland Rule 2–322(c), we held that the circuit court did not err in considering those documents, but that, in doing so, it had transformed a motion to dismiss into a motion for summary judgment. *Id.* at 789, 614 A.2d 1021. That rule provides:

> If, on a motion to dismiss for failure of the pleading to state a clam upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 2–501, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 2–501.

Md. Rule 2–322(c).

Although framing its ruling in terms of a motion to dismiss, the orphans' court considered, as did the trial court in

*Hrehorovich,* matters presented by extra-pleadings sources and thereby turned a motion to dismiss into a motion for summary judgment. *See Hrehorovich,* 93 Md.App. at 789, 614 A.2d 1021. Accordingly, we shall review the orphans' court ruling as a grant of summary judgment.

The standard for reviewing a grant of summary judgment requires us to "determine if there is a genuine dispute of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Crews v. Hollenbach,* 126 Md.App. 609, 624, 730 A.2d 742 (1999), *aff'd,* 358 Md. 627, 751 A.2d 481 (2000). If, after construing all facts and reasonable inferences in favor of the non-moving party, we conclude that a genuine dispute as to a material fact exists, we must vacate the grant of summary judgment. *See Bank of N.Y. v. Sheff,* 382 Md. 235, 244, 854 A.2d 1269, 1275 (2004). In this instance, we find that such a dispute does exist and shall therefore vacate the judgment of the orphans' court.

### Administrative and Judicial Probate

Because substance without its procedural context can be confusing, if not misleading, we begin our analysis of this standing dispute by placing it within its procedural context. To do so, we shall briefly outline the differences between administrative and judicial probate and the rules that govern standing to participate in either proceeding.

Administrative probate "[i]s a proceeding instituted by the filing of a petition for probate by an interested person before the register for the probate of a will or a determination of the intestacy of the decedent, and for the appointment of a personal representative." ET § 5–301. Such proceedings "may be conducted without notice, to the extent provided in § 5–304, subject to the right of an interested person to require judicial probate...." *Id.*

Judicial probate is "a proceeding instituted by the filing of a petition for probate by an interested person, or creditor, with the court for the probate of a will or a determination of the intestacy of the decedent, and for the appointment of a

personal representative." ET § 5–401. It "is conducted after notice as provided in § 5–403, and is final except as provided in ET § 5–406." *Id.* Thus, the principal difference between the two forms of probate is that the former is an administrative proceeding before the register of wills while the latter is a judicial proceeding before the orphans' court.

In conducting judicial probate, the orphans' court may hold plenary proceedings, ET § 5–404(b), call witnesses, ET § 2–102(a), and resolve issues of fact, ET § 2–105(a). After doing so, the orphans' court "shall determine the testamentary capacity of the decedent if he died testate," and "shall appoint one or more personal representatives." ET § 5–404(a). If appropriate, the court may "revoke, modify, or confirm action taken at the administrative or any prior judicial probate." *Id.*

The Estates & Trusts Article imposes limits on who has standing to file a petition for judicial probate: only "interested persons" and creditors may file such a petition. ET § 5–402. An "interested person" is defined by ET § 1–101(i) as:

(1) A person named as executor in a will;

(2) A person serving as personal representative after judicial or administrative probate;

(3) A legatee in being, not fully paid, whether his interest is vested or contingent;

(4) An heir even if the decedent dies testate, except that an heir of a testate decedent ceases to be an "interested person" when the register has given notice pursuant to § 2–210 or § 5–403(a).

And a "legatee" is defined as "a person who under the terms of a will would receive a legacy," ET § 1–101(m), that is, "any property disposed of by will." ET § 1–101(*l*). An heir, on the other hand, is defined as "a person entitled to property of an intestate decedent." ET § 1–101(h). The orphans' court ruled that, under these subsections, appellants were without standing to file the petition as either heirs or legatees.

## Heirs

Appellants claim that the orphans' court erred in ruling that, as heirs of a testate decedent, they were not "interested persons" under ET § 1–101(i) with standing to request judicial probate, once the register of wills gave notice of probate and the appointment of the personal representatives, under ET § 5–403. They argue that, as heirs of the decedent, they were indeed interested parties, under ET § 1–101(i)(4), and thus had standing to request judicial probate. They are at least correct in asserting that they are the decedent's heirs. An "heir," under Maryland law, is "a person entitled to property of an intestate decedent pursuant to §§ 3–101 through 3–110." ET § 1–101(h). Section 3–101 simply introduces the subtitle on intestate succession, while ET § 3–110 provides that certain heirs, who do not "survive the decedent by 30 full days . . . shall be considered to have predeceased the decedent for purposes of intestate succession, and [are] not to be entitled to the rights of an heir." ET § 1–101(h).

As the Decedent's children, or "issues," *see* ET § 1–209, appellants would have been entitled to the decedent's property, had she died intestate. *See* ET § 3–103. Thus, appellants are indeed her heirs.

But that does not mean that they are *ipso facto* "interested persons" with standing to seek judicial probate. Although an heir, upon the death of the decedent, is an interested person, he or she loses that status, according to ET § 1–101(i)(4), "when the register has given notice pursuant to § 2–210 or § 5–403(a)." Section 2–210 requires that the heirs and legatees of an estate are to be given personal notice of the appointment of the estate's personal representatives by the register of wills, while ET § 5–403(a) prescribes when notice of judicial probate should be given to "all interested persons" and in what form. "All persons having any objection to the appointment (or to the probate of the will of the decedent)" by the register of wills must "file the same with the register of wills on or before six months from the date of the appointment." ET § 7–103(b). But, when small estates are involved,

that time period is reduced from six months to thirty days. ET § 5–603(b)(1).

■ Here, the register of wills gave notice of probate and appellees' appointment as personal representatives in May 2003. On June 11, 2003, appellants, claiming to be "interested persons," filed their petition for judicial probate. Because appellants received their notice of probate and appointment of appellees as personal representatives before that time, the orphans' court, relying on ET § 1–101(i)(4) ("a testate decedent ceases to be an 'interested person' when the register has given notice pursuant to § 2–210. . . ."), concluded that appellants, as heirs, were no longer interested persons. That conclusion stands.

Section 1–104(i)(4) plainly states that an heir's status as an interested person ends when the register of wills gives notice of probate and appointment of the personal representative. *See* ET § 1–101(i)(4). And, given the clear and unambiguous language of that subsection, that ends our inquiry. As the Court of Appeals observed, "[w]hen the words are clear and unambiguous, there is no need to search further." *Medex v. McCabe*, 372 Md. 28, 38, 811 A.2d 297 (2002).

While acknowledging that, if given a "literal" reading, that subsection does provide that heirs cease to be "interested persons" when the register of wills sends notice of probate and appointment, appellants insist that such a construction of ET § 1–101(4) is "nonsensical." And, were they correct, we would be required to reject the orphans' court conclusion as every statute is entitled to "a reasonable interpretation, not one that is illogical and incompatible with common sense." *State v. Thompson*, 332 Md. 1, 8, 629 A.2d 731 (1993); *see Harris v. State*, 331 Md. 137, 145, 626 A.2d 946 (1993). But they are not.

Denying heirs standing to petition for judicial probate, once they receive notice of administrative probate, makes sense. If an heir is to receive nothing under the terms of a will offered for probate, he or she has no interest in the probate of that will and certainly no interest in petitioning the orphans' court

to accept that document as a decedent's last will and testament. And that principle has been adopted, in one form or another, by other state courts, see, e.g., *Smith v. Negley*, 304 S.W.2d 464, 468 (Tex.Ct.App.1957) ("An heir . . . is interested only in opposition to the will."); *In re Aberman's Estate*, 412 N.Y.S.2d 572 (N.Y.Surr.Ct.1979), and endorsed by at least one legal treatise. *See* 95 C.J.S. *Wills* § 468 at 492 (2001) ("[I]t is necessary that a person show that he or she has some interest in the matter before they will be allowed to become a proponent, since one who has no sufficient interest in the will or estate, such as a pecuniary interest which will be benefitted and affected by the probate of the will and one which will be materially impaired in the absence of its probate, cannot petition for probate.").

Similarly, a person who receives nothing under the terms of a will has no interest in the administration of the estate, including the appointment of the personal representative. *See, e.g., McClinton v. Sullivan*, 263 Ga. 711, 438 S.E.2d 71, 73 (1994) (Having "no legal right to be appointed administrator and no interest in the estate; [the petitioner has] no standing to challenge the probate court's appointment of the . . . administrator."); *In re Alstock*, 230 La. 167, 88 So.2d 14, 15 (1956) ("Throughout our jurisprudence is the well-accepted principle that one without a pecuniary interest has no judicial standing to interfere with the administration of a succession."); *In re Lyons' Estate*, 132 Cal.App.2d 790, 283 P.2d 66, 68 (1955) ("One must be a 'person interested' in the estate in order to oppose a petition for letters of administration.").

That does not mean that, once they cease to be "interested persons," heirs of testate decedents are without means to protect any interests they may have in intestacy or a prior will. They still have the right to challenge the validity of the will by filing a petition to caveat under ET § 5–207. That section provides, in part:

> Regardless of whether a petition for probate has been filed, a verified petition to caveat a will may be filed at any time prior to the expiration of six months following the first appointment of a personal representative under a will, even

if there be a subsequent judicial probate or appointment of a personal representative.

ET § 5–207(a). In fact, "[i]f the petition to caveat is filed before the filing of a petition for probate, or after administrative probate, it has the effect of a request for judicial probate." *Id.* § (b). As heirs, that is, "person[s] entitled to property of an intestate decedent pursuant to §§ 3–101 through 3–110," ET § 1–101(h), appellants probably [7] had sufficient interest in the estate to petition to caveat. *See Sherman v. Robinson,* 319 Md. 445, 448 n. 2, 573 A.2d 34 (1990).

Appellants further argue that appellees' "literal" interpretation of ET § 1–101(i)(4) conflicts with other notice provisions in the Estates & Trusts Article, notably sections 2–210 and 7–103. Under those sections, once the register of wills has admitted a will to probate and appointed the personal representative, the register shall publish in a newspaper of general circulation notice of the appointment and send every heir and legatee of the decedent a copy of the newspaper notice. ET § 2–210. That notice must state that "[a]ll persons having any objection to the appointment (or to probate of the will of the decedent) shall file the same with the register of wills on or before six months from the date of the appointment." ET § 7–103(b). When an estate qualifies as a "small estate," that is, an estate having "a value of $30,000 or less as of the date of the death of the decedent," ET § 5–601(a), the period for objecting is shortened to thirty days from the date of the appointment. ET § 5–603(b).

Because the register of wills is required by statute to send notice of appointment to all heirs, as well as legatees, of a testate decedent, informing them that "all persons" objecting to the appointment of the personal representative, or to the probate of the will, have six months (or thirty days) to object, appellants argue that the legislature could not have intended that the notice of appointment both cut off their rights to file a

7. We qualify that statement because it is not clear from the record whether there was a prior will and, if there was, whether appellants would have received any property under it.

petition for judicial probate, by denying them "interested person" status under ET § 1–101(i)(4), while granting them rights to object to the validity of probate and the appointment of the personal representative under ET § 7–103(b). While appellants' argument is inventive, taking advantage as it does of the not altogether tidy aspects of the Estates & Trusts Article, it fails upon scrutiny.

Section 2–210 does indeed require that a copy of the notice of appointment be sent to all heirs and legatees. And that notice, according to ET § 7–103, is to be sent to heirs of both testate and intestate decedents. It also notifies its recipients of the time in which "persons" may object to the appointment of the personal representative and to the probate of the will. *Id.* The failure of that notice to be more specific and expressly indicate that not all recipients have standing to object to the probate of the will or to the appointment of the personal representative does not compel us to conclude that heirs of testate decedents, contrary to the plain language of ET § 1–101(i)(4), continue to be interested persons, with standing to object, after receiving such notice.

It is also true, as appellants point out, that former Article 93, § 1–101(f), which was drafted by the Governor's Commission to Review and Revise the Testamentary Law of Maryland (known as the "Henderson Commission")[8] and enacted in 1969, provided that an heir of a testate decedent lost his or her status as an interested party, not when the register gave notice of administrative probate, but when those proceedings or judicial probate ended. *See* Md.Code (1957, 1969 Repl.

---

8. In 1965 the General Assembly adopted Joint Resolution No. 23 for the appointment of a commission to study and revise the laws of decedents' estates. Shale D. Stiller and Roger D. Redden, *Statutory Reform in the Administration of Estates of Maryland Decedents, Minors and Incompetents*, 29 Md. L.Rev. 85, 87–88 (1969). Pursuant to that resolution, Governor Millard Tawes appointed the "Henderson Commission," named for its chairman, the Honorable William L. Henderson, former Chief Judge of the Court of Appeals. *Id.* The Henderson Commission conducted a four year study, and after extensive comments and hearings, recommended an "entirely new Article 93" to govern the laws of decedents' estates. *See id.*

Vol.), Art. 93 § 1–101(f)(3). Thus, under earlier Maryland law, an heir had standing to file a petition for judicial probate even after receiving notice of appointment.

But, two years later, the statutory definition of an "interested person" was revised to read, as it does now, that an "interested person" is

an heir even if decedent died testate except that an heir of a testate decedent ceases to be an "interested person" *after the register has given notice pursuant to § 2–209 (unless judicial probate is requested thereafter and then after the register has given notice pursuant to § 5–403(a))*.

Md.Code (1957, 1969 Repl.Vol., 1971 Cum.Supp.), Art. 93 § 1–101(f)(3) (emphasis added).

In changing the definition of "interested person," the legislature, it appears, simply neglected to make any corresponding changes to the form and content of the notice, set forth in ET § 7–103, to clarify that an heir, as one of several classes of persons receiving notice of the appointment, could not challenge the appointment of the personal representative or the administrative probate of the will under that subsection, after receiving notice of the appointment. Nothing can be read into that omission, given that it does not necessarily conflict with the plain language of ET § 1–101(i)(4) and, even if it did, the notice set forth in ET § 7–103 pre-dates the revised definition of "interested person" and therefore is amended by it. *See Bell v. State,* 236 Md. 356, 365, 204 A.2d 54 (1964) ("[A] subsequent independent statute, complete in itself, which alters or changes a prior act in such a way that the two are repugnant and cannot stand together, in whole or in part, effects a repeal or an amendment of the earlier act even though there is not [sic] reference whatever in the later act to the earlier.").

Appellants further argue that the 1971 amendment was merely stylistic and was not intended to shorten the time in which heirs of testate decedents were "interested persons." But even a cursory comparison of the two provisions indicates

that the changes made by legislature in the language of that section were substantive and not simply stylistic.

## Legatees

Appellants also contend that they are "legatees" under the terms of the decedent's Will and thus have standing as "interested persons" to request judicial probate. The orphans' court found that claim no more persuasive than it did appellants' assertion that they had standing as the decedent's heirs. Concluding that appellants' bequests had been adeemed before the decedent's death, the court declared that appellants were no longer "legatees" and therefore had no standing, as legatees, to file for judicial probate. "[M]erely being named to receive an asset under the will that no longer exists as an asset of the testator," the court reasoned, "does not make one a legatee when that individual would actually receive nothing because they will not receive anything from the will."

 But the orphans' court's ruling apparently rested upon the slenderest of reeds: a bald assertion in appellees' motion to dismiss that the decedent, before her death, had transferred, to a revocable trust, the "tangible personal property" that appellants were to receive under her Will. Not only was that statement unsupported by either oath or documentation, but its accuracy was in dispute. Appellants alleged in their opposition to appellees' motion to dismiss that no ademption of that property had ever occurred. Hence, the orphans' court had before it two conflicting claims as to the present status of the decedent's tangible personal property: in legal terms, a genuine dispute as to a material fact. Yet, it failed to deny appellees' motion on that or any other ground.

Appellees assert, however, that no such dispute existed because appellants "did not challenge the sworn statement in ... the administrative probate petition" that the estate's only asset was a bank account containing a little less than $13,000. But that assumes that appellants were required to do so or, by their inaction, conceded the point. They were not and did not. Appellants were under no legal obligation to respond to the

allegations of the administrative probate petition, once they filed a petition for judicial probate. That petition supplanted appellees'; transformed the nature of the proceedings, from administrative to judicial; and rendered nugatory any decisions or actions taken by the register as to the Will, estate, or appointment of personal representatives.

At the time that appellants filed their petition they were only required to show that they were "interested persons," under ET § 1–101(i), which they did by stating, under oath, that they were legatees under the decedent's will. That does not mean that appellees could not challenge their standing to file that petition on a motion to dismiss or, as they in effect did in this instance, on a motion for summary judgment.

Moreover, the orphans' court did not apparently even rely on that petition in rendering its decision. The only evidence, cited by that court in dismissing appellants' petition, was the unsworn and undocumented claim of ademption in appellees' motion to dismiss. It made no mention of appellants' denial of ademption. Yet, it was required to consider both and, once it had done so, it should have denied appellees' motion on the ground that a genuine issue as to a material fact existed.

We further note that appellants' petition for judicial probate complied with Maryland law. The petition was in the pre-printed form, required by ET § 5–206, and contained the information required by ET § 5–201.[9] That appellants

---

9. That section requires that the following must be provided in a petition for probate:

> (a) *The decedent*—It shall state the name, domicile, place, and date of death of the decedent.
> (b) *Interest of Petitioner*—It shall state the interest of the person filing the petition.
> (c) *Venue*—It shall state the county in which the decedent was domiciled at the time of his death and, if not domiciled in Maryland, the county in this state which the petitioner believes was the situs of the largest part in value of the property of the decedent at the time of his death.
> (d) *Other proceedings*—It shall list all other proceedings filed in Maryland and elsewhere regarding the same estate.

checked the box on that form, indicating that they were seeking judicial probate of a small estate, did not constitute an admission that their legacy had in fact been adeemed, as appellees suggest. The decedent's estate, according to appellees, had only one asset, a bank account containing less than $13,000. Since a "small estate" may contain up to $30,000 in property, ET § 5–601(a), there was sufficient leeway in the value of the estate for it to still qualify as a small estate even after the value of the tangible personal property was added back in. Hence, the designation of the decedent's estate as a "small estate" by appellants' petition did not constitute an admission, express or implied, that the decedent's tangible personal property was no longer part of the decedent's estate.

Moreover, appellants candidly indicated in "Schedule—B" of their petition that a description and statement of value of each item of property would have to await an investigation "by the Independent Personal Representative" they hoped the court would appoint. Considerations of cost and time, we note, frequently lead many, who are uncertain of the value of the assets of an estate, to initially request small state administration. They do so to avoid the time and expense that probate otherwise entails, knowing that such request can be easily amended once it is clear that the assets of the estate exceed $30,000.

And finally, although appellants did not allege, in their petition, that there were unaccounted-for assets of the estate,

---

(e) *Testamentary status*—It shall state whether the decedent died testate or intestate, and

(1) If testate, there shall be exhibited with the petition the will or a copy of the will. If this exhibit cannot be produced, a statement of the reasons for the inability, the name, and the address of the person in whose custody the documents may be, a statement of the provisions of the will as far as known to the petitioner, and a statement of the manner in which the exhibit came into the hands of the petitioner as well as a statement that he knows of no later will; or

(2) If intestate, a statement of the extent of a search for a will.

(f) *Witnesses to the will*—It shall state the names and addresses of all persons who are witnesses to the will referred to in subsection (e)(1) of this section.

ET § 5–201.

neither did they concede that the estate, as appellee's petition alleged, had only one asset—a bank account containing less than $13,000. Instead, appellants' petition for judicial probate requested the appointment of an "independent personal representative"—one "without any prior business or personal relationships with the Decedent"—to conduct an "independent investigation" to determine whether actions purportedly taken by Decedent and on her behalf "were in accord with her intent." They did not list "all real and personal property owned by decedent," as requested by "Schedule—B" of the pre-printed petition but, instead, as noted, requested that assets of the estate "be further investigated by [an] Independent Personal Representative."

As a basis for that request, appellants asserted in a statement attached to their petition that they

objected[ed] to the continued appointment of Patricia K. Smyth and Francis X. Knott, as personal representatives of the Estate, and request[ed] the appointment of an independent person selected by the Court to serve as Personal Representative of the Estate for purposes of conducting an independent investigation to assure that all actions taken by or on behalf of Decedent, during her lifetime, and on behalf of her Estate, after her death, were in accord with her intent, without violation of a confidential relationship and without self-dealing or other conflict.

To consider these and other issues, appellants demanded a "plenary hearing." Although the petition would not have satisfied the requirements of a complaint filed in a court of general jurisdiction, failing as it did to allege, except by implication, why appellants were entitled to the relief they requested, such specificity is not required to obtain a plenary hearing in the orphans' court. That proceeding must be "instituted at any time before administrative probate or within the period after administrative probate provided by § 5–304," upon the request of an interested person. ET § 5–402(a).

In sum, without either side producing any evidence besides bald and unsworn to assertions offering conflicting accounts as

to the fate of the decedent's tangible personal property, the orphans' court resolved this dispute in favor of appellees, holding that the decedent's property had been, as appellees claimed, transferred to the decedent's revocable trust, during her lifetime, and that that ademption deprived appellants of standing to request judicial probate. By relying on information outside of the pleadings, the orphans' court transformed appellees' motion to dismiss into a motion for summary judgment and, thereafter, violated Rule 2–501 by entering summary judgment, notwithstanding the existence of a genuine dispute as to a material fact. We shall therefore vacate the judgment of the orphans' court and remand this case to that court for further proceedings not inconsistent with this opinion.

■ On remand, the orphans' court may consider whether the tangible property at issue was, as appellants contend, concealed by appellees. Although the orphans' court has no jurisdiction over questions of title to personal property, *DeFelice v. Riggs Nat'l Bank*, 55 Md.App. 476, 481–82, 462 A.2d 88 (1983), or real property, *Wingert v. State*, 125 Md. 536, 543, 94 A. 166 (1915) or, for that matter, trusts, *Galard v. Winans*, 111 Md. 434, 472, 74 A. 626 (1909), it does have jurisdiction to determine title "where a person interested in the estate charges the administrator with concealing or having in his hands property belonging to the estate which he has omitted to return in the inventory." *Kerby v. Peters*, 172 Md. 1, 7, 190 A. 511 (1937); *see also Linthicum v. Polk*, 93 Md. 84, 93–94, 48 A. 842 (1901); *see also McKenney v. McKenney*, 214 Md. 397, 404, 135 A.2d 423 (1957); *Pratt v. Hill*, 124 Md. 252, 256, 92 A. 543 (1914); *Daugherty v. Daugherty*, 82 Md. 229, 231, 33 A. 541 (1896). Furthermore, we note that the orphans' court "may determine questions of title to personal property not exceeding $20,000 in value for the purpose of determining what personal property is properly includable in an estate that is the subject of a proceeding before the court." ET § 1–301(b).

If the orphans' court does find that property has been concealed, and the personal representatives have acted in bad faith, it may chose other persons to serve as personal representatives of the estate. *See Kerby,* 172 Md. at 6, 190 A. 511.

Moreover, if the orphans' court determines, on remand, that appellants' legacy had been adeemed, appellants would not then qualify as interested persons with standing to challenge the personal representative. An "interested person" is defined, in part, as "[a] legatee in being, not fully paid." ET § 1–101(i)(3). And "legatee" is defined as "a person who under the terms of a will would receive a legacy." ET § 1–101(m). "[U]nder the terms of a will" means, appellants argue, that, in determining whether an individual is a legatee, the court should not read beyond the four corners of the will. In other words, even if the legacy has been adeemed, appellants would remain "legatees in being, not fully paid" because they are still named in the will. We disagree.

An ademption is "[t]he destruction or extinction of a legacy or bequest by reason of a bequeathed asset's ceasing to be part of the estate at the time of the testator's death...." *Black's Law Dictionary* 39 (7th Ed.1999). The effect of which is a " 'revocation, recalling, or cancellation, of a legacy, according to the apparent intention of the testator, implied by the law from acts done by him in his life, though such acts do not amount to an express revocation of it.' " *Von Steinner v. Sorrell,* 259 Md. 228, 230, 269 A.2d 604 (1970) (quoting *Black's Law Dictionary* 60 (4th ed.1951)); *see also* 97 C.J.S. *Wills* § 1770 (2001) ("Where a legacy is adeemed or satisfied the will is to be read as though it had been expunged from it and the legatee or devisee takes nothing, with no rights being conferred to such legatee or devisee.").

Thus, if, at the time of the testator's death, a legacy has been adeemed, and thereby revoked, *see Sorrell,* 259 Md. at 230, 269 A.2d 604, the person, who was to receive that legacy, would no longer be entitled to receive it under the terms of the will and, therefore, would no longer be a "legatee" as defined by ET § 1–101(m). Indeed, the Henderson Commis-

sion, which drafted this provision, commented that " '[l]egatee' would not include someone named in the will to receive a legacy which is void or otherwise inoperative." *See Second Report of the Governor's Commission to Review and Revise the Testamentary Law of Maryland* 3 (1968).

Moreover, appellants' contention that the ademption of one's legacy is irrelevant to one's status as a legatee cannot be reconciled with the definition of an "interested person." To qualify as an "interested person," a legatee must not, under ET § 1–101(i)(3), "be fully paid." Once he is fully paid, his interest in the probate of the will or the appointment of the personal representative is extinguished and he is no longer an interested person. The same is true for a legatee whose legacy has been adeemed. Once his legacy is adeemed, his interest in the will is extinguished. To argue otherwise, as appellants do, is to claim that an interested person can be someone without an interest—a contradiction in terms.

**JUDGMENT VACATED. CASE REMANDED TO THE ORPHANS' COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEES.**