*Maryland Department of Health v. Christine Myers*, No. 3168, September Term, 2018,
Argued: February 12, 2020

**ESTATES AND TRUSTS – CLAIMS AGAINST ESTATE – RECOUPMENT OF
MEDICAID BENEFITS PAID – LIMITATIONS OF ACTIONS**

The limitations period for the Department of Health to file a claim for recoupment of
Medicaid benefits paid to a decedent, which requires the Department to file within "6
months after publication of notice of the first appointment of a personal representative,"
begins to run when the third and final notice of the appointment is published.

Circuit Court for Frederick County
Case No.: C-10-CV-18-000525

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 3168

September Term, 2018
_____

MARYLAND DEPARTMENT OF HEALTH

v.

CHRISTINE MYERS

_____

Graeff,
Beachley,
Gould,

JJ.

_____

Opinion by Gould, J.
_____

Filed: December 17, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

When the recipient of Medicaid benefits dies, the Maryland Department of Health (the "Department") may pursue a claim against her estate for reimbursement of the Medicaid benefits she had received. Like any other creditor of an estate, the Department has a certain window of time to present its claim. The limitations period for the Department is defined by section 8-103(f)(1) of the Estates & Trusts Article ("ET") of the Annotated Code of Maryland (1974, 2017 Rep. Vol.), which requires the Department to file within "6 months after *publication of notice* of the first appointment of a personal representative." (Emphasis added). The "publication of notice" is governed by ET § 7-103(a), which requires publication of notice of the appointment of a personal representative once a week for three consecutive weeks.

In this Medicaid reimbursement action, the issue is whether the six-month limitations period starts when the first of the three weekly notices is published or when the final notice is published. The Department advocates for the latter, but both the orphans' court and the circuit court held that it's the former. The timeliness of the Department's claim against the decedent's estate hangs in the balance. As we explain below, we agree with the Department and conclude that its claim was timely filed. We therefore reverse the judgment of the circuit court and remand the case with instructions to vacate the judgment of the orphan's court for an adjudication of the Department's claim on the merits.

## BACKGROUND

In 1976, section 15-121(a) of the Health-General ("HG") Article of the Annotated Code of Maryland (1976, 2019 Repl. Vol.) was enacted to permit the Department to recoup

the Medicaid benefits provided to a decedent by filing a claim against her estate.[1]  Section

8-103(f) of the Estates and Trusts Article establishes the Department's filing deadline: [2]

> A claim filed by the Maryland Department of Health against the estate of a deceased Maryland Medical Assistance Program recipient, as authorized under § 15-121(a) of the Health-General Article, is forever barred against the estate, the personal representative, and the heirs and legatees, unless the claim is presented within the earlier of the following dates:
>
> (1) 6 months after publication of notice of the first appointment of a personal representative; or
>
> (2) 2 months after the personal representative mails or otherwise delivers to the Department's Division of Medical Assistance Recoveries a copy of a notice in the form required under § 7-103 of this article or other written notice, notifying the Department that the claim shall be barred unless the Department presents its claim within 2 months from the receipt of the notice.

The "publication of notice," in turn, is governed by ET § 7-103(a) which provides:

(1) After the appointment of a personal representative, the register shall have a notice of the appointment published in a newspaper of general

---

[1] HG § 15-121(a) provides that "[i]n accordance with applicable federal law and rules and regulations, including those under Title XIX of the Social Security Act, the Department may make claim against the estate of a deceased Program recipient for the amount of any medical assistance payments under this title."  (internal footnote omitted).

[2] All other claims against a decedent's estate must be filed within the earlier of:

(1)     6 months after the date of the decedent's death; or

(2)     2 months after the personal representative mails or otherwise delivers to the creditor a copy of a notice in the form required by § 7-103 of this article or other written notice, notifying the creditor that the claim will be barred unless the creditor presents the claim within 2 months after the mailing or other delivery of the notice.

ET § 8-103(a).

circulation in the county of appointment once a week in 3 successive weeks, announcing the appointment and address of the personal representative, and notifying creditors of the estate to present their claims.

(2) The personal representative shall file or have filed with the register a certification that a notice has been published.

And, finally, section 7-103(b) provides that:

The notice of appointment shall be substantially in the following form:

*"To all persons interested in the estate of ……….*

*This is to give notice that the undersigned, ………. whose address is ……….. was, on ………., appointed personal representative of the estate of ………. who died on ………. (with) (without) a will.*

*All persons having any objection to the appointment (or to the probate of the will of the decedent) shall file the same with the register of wills on or before 6 months from the date of the appointment.*

*All persons having claims against the decedent must present their claims to the undersigned, or file them with the register of wills on or before the earlier of the following dates:*

*(1)     6 months from the date of the decedent's death; or*

*(2)     2 months after the personal representative mails or otherwise delivers to the creditor a copy of this published notice or other written notice, notifying the creditor that the creditor's claim will be barred unless the creditor presents the claim within 2 months from the mailing or other delivery of the notice.*

*Any claim not filed on or before that date, or any extension provided by law, is unenforceable thereafter.*

*………………*
*Personal representative*

*Date of first publication:*

*……….".*

(Emphasis added).

Carol Diana Miller died on June 6, 2017. Ms. Miller had received Medicaid benefits in the amount of $449,053.71, and, therefore, the Department had a reimbursement claim against her estate for that amount pursuant to HG § 15-121(a).

On July 17, 2017, the Frederick County Register of Wills (the "Register")[3] appointed Appellee Christine Myers as the personal representative (the "PR") of Ms. Miller's estate. The Register published notice of this appointment in the *Frederick News-Post* on July 26, 2017, August 2, 2017, and August 9, 2017. The Department filed its reimbursement claim on January 25, 2018, and it was marked as received by the Register on January 30, 2018.

The PR filed a Notice of Disallowance of the Department's claim pursuant to ET § 8-107(a)(1), prompting the Department to file a Petition for Allowance of Claim Against Decedent's Estate in the orphans' court under ET § 8-107(b).[4] The orphans' court denied the Department's petition as untimely under ET § 8-103(f).

---

[3] "Register" is defined as the "register of wills of a county." ET § 2-201(a).

[4] ET § 8-107 provides:

(a) If a personal representative intends to disallow, in whole or in part, a claim that has been presented within the appropriate time and in the form prescribed in § 8-104(b) or (c) of this subtitle, the personal representative shall mail notice to each claimant stating:

(1) That the claim has been disallowed in whole or in stated amount; or

The Department appealed to the Circuit Court for Frederick County, which affirmed the orphans' court's decision.

The Department filed a timely notice of appeal and presents the following question:

Did the circuit court err by holding that the Department's six-month period to present a claim for recovery of Medicaid payments under § 8-103(f) ran from the date of the first notice of appointment of a personal representative, when § 7-103(a) requires that notice of the appointment be published once a week for three successive weeks?

---

(2) That the personal representative will petition the court to determine whether the claim should be allowed.

(b) (1) If the claim is disallowed in whole or in a stated amount, the claimant is forever barred to the extent of the disallowance unless the claimant files a petition for allowance in the court or commences an action against the personal representative or against one or more of the persons to whom property has been distributed.

(2) The action shall be commenced within 60 days after the mailing of notice by the personal representative.

(3) The notice shall warn the claimant concerning the time limitation.

(c) (1) If no action is taken by the personal representative disallowing a claim in whole or in part under subsection (a) of this section, on the petition of the personal representative or a claimant, the court shall allow or disallow in whole or in part a claim or claims presented to the personal representative or filed with the register in due time and not barred by subsection (a) of this section.

(2) Notice in this proceeding shall be given to the claimant, the personal representative, and interested persons as the court directs by order entered at the time the proceeding is commenced.

(d) A judgment in an action against a personal representative to enforce a claim against the estate of a decedent is an allowance of the claim.

5

We answer this question in the affirmative, and, as a result, we conclude that the Department's claim was timely.

## DISCUSSION

The timeliness of the Department's claim hinges on the application of ET § 8-103(f). If "publication of notice" under ET § 8-103(f) refers to the first of the three required publications under ET § 7-103(a), the Department's claim was untimely; if it refers to the third publication, the claim was timely. Thus, the simple facts of this case tee up a question of statutory construction.

The interpretation of a statute is an issue of law which we review without deference. *See Rodriguez v. Cooper*, 458 Md. 425, 437 (2018). Our goal is to understand and implement the General Assembly's intent. *See Stoddard v. State*, 395 Md. 653, 661 (2006). We start with the statute's plain language and apply the natural and most commonly understood meaning of its words. *Gillespie v. State*, 370 Md. 219, 222 (2002). We also "accord sentences an ordinary grammatical structure." *Mazor v. State Dep't of Correction*, 279 Md. 355, 362 (1977). We try to avoid interpretations that defy common sense or are otherwise illogical or unreasonable. *Beyer v. Morgan State Univ.*, 139 Md. App. 609, 631 (2001) *aff'd*, 369 Md. 335 (2002) (quotations omitted). And, if the words are clear and unambiguous, we stop there and "simply apply the statute as it reads." *Gillespie*, 370 Md. at 222.

If the words are ambiguous, we look at the statute's structure, context, relationship with other laws, and legislative history, among other indicia of intent. *Stoddard*, 395 Md.

6

at 662-63.[5]  Examining the context of the statute includes construing related statutory provisions harmoniously, if possible. *George Wasserman & Janice Wasserman Goldsten Family LLC v. Kay*, 197 Md. App. 586, 628 (2011), *abrogated on other grounds by Plank v. Chernski*, 469 Md. 548 (2020); *see also Gardner v. State*, 344 Md. 642, 649-50 (1997).

## I.

### PLAIN LANGUAGE
### ANALYSIS OF ET § 8-103

Our reading of the plain language of ET § 8-103 is straightforward.  In enacting ET § 7-103(a), the General Assembly made a policy determination that, to adequately provide notice to creditors and other interested parties of the decedent's death and appointment of a personal representative, three successive weekly publications of the notice were required; anything less would be incomplete and partial.  It logically follows that the phrase "publication of notice" in ET § 8-103(f) similarly means the notice that meets the publication requirements established under ET § 7-103.  If the General Assembly intended that partial compliance with the publication requirement under ET § 7-103(a) would suffice as "publication of notice" under ET § 8-103(f), the General Assembly could have qualified "publication of notice" with, for example, the word "first."

The PR would have us construe ET § 8-103(f) as if it did.  But the PR doesn't contend we should, or even need to, pull "first" out of thin air; instead, she argues we

---

[5]  Even if the words are unambiguous, a review of the legislative history may, in certain contexts, be useful to confirm its interpretation or to rule out "another version of legislative intent alleged to be latent in the language." *Blackstone v. Sharma*, 461 Md. 87, 113 (2018) (internal quotations omitted).

should borrow "first" from another clause in ET § 8-103(f) that, she maintains, has no use for it. Specifically, according to the PR, the word "first" in the phrase "publication of notice of the first appointment of a personal representative" must be construed to modify "publication" instead of "appointment." *See* ET § 8-103(f). Thus, the PR concludes, "publication of notice" refers to the first of the three publications required under ET § 7-103(a).

The PR acknowledges that "first" precedes "appointment" as the subsection is currently written, but points out that there is no requirement to publish notice when, as it sometimes happens, the initial personal representative is replaced. Thus, in the context of ET § 8-103(f), "first" can be removed from the clause "publication of notice of first appointment of a personal representative" without changing its meaning. Thus, lest "first" be consigned to irrelevance, the PR urges us to construe ET § 8-103(f) as if "first" precedes and modifies "publication."

The PR makes another argument based on the canon of construction that words in statutes should not be rendered superfluous, this time relying on the form of the notice provided under ET § 7-103(b). Under the last sentence of ET § 7-103(a), the notice must be "substantially in the form" provided under ET § 7-103(b). The form in ET § 7-103(b), as shown above, includes the name of the decedent, the date of death, the name of the personal representative, and the date of the personal representative's appointment. The form also has a placeholder at the bottom for insertion of the "Date of *first* publication." ET § 7-103(b) (emphasis added). As the PR sees it, the placeholder for the "Date of first publication" refers to the "publication of notice" in ET § 8-103(f). Otherwise, the

8

placeholder in the notice form for "Date of first publication" would be rendered meaningless.

The PR's insistence that we interpret ET § 8-103(f) as if the word "first" does not precede and modify the word "appointment," but instead precedes and modifies the word "publication" defies basic principles of grammar. *See* WILLIAM STRUNK, JR. & E.B. WHITE, THE ELEMENTS OF STYLE 28 (3rd ed. 1979).[6]  Moreover, the PR's interpretation cannot be squared with the relevant legislative history, which shows that the word "first" is located right where it belongs.

Section 8-103 was amended in 1971, 1989, 1992, 1997, and 2005.  Prior to the 1971 amendment, the six-month limitations period for all creditor claims commenced on the "first publication" of the notice.[7]  The General Assembly therefore knew where "first" should be placed in a sentence when it wanted it to modify "publication."

---

[6] The ELEMENTS OF STYLE advises:

> The position of the words in a sentence is the principal means of showing their relationship.  Confusion and ambiguity result when words are badly placed.  The writer must, therefore, bring together the words and groups of words that are related in thought and keep apart those that are not so related.

[7] Prior to 1971, ET § 8-103(a) provided:

> Except as otherwise expressly provided by statute with respect to claims of the United States and the State of Maryland, all claims against a decedent's estate, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, shall be forever barred against the estate, the personal representative, and the heirs and legatees, unless presented within six months after the date of the first

9

In 1971, the General Assembly changed the limitation period's trigger date under ET § 8-103(a) to "the date of first appointment of a personal representative."[8] This was the first time "first appointment of a personal representative" was introduced into the § 8-103(f) lexicon. It made perfect sense for the General Assembly to place "first" immediately prior to "appointment." A personal representative can die, resign, or be terminated by the court. By qualifying "appointment of a personal representative" with the word "first," the General Assembly foreclosed an argument that the limitations period began anew on the appointment of, for example, a second or third personal representative. Thus, creditors knew that their deadline began not on, say, the second, third or fourth appointment of a personal representative, but rather the "first appointment."

After enjoying an 18-year run as the trigger date under § 8-103(a), the date of the "first appointment of the personal representative" was sidelined when, in 1989, the General Assembly changed the limitations period to "nine months after the date of the decedent's death."[9]

---

published notice to creditors, or if notice to creditors has not been published, within the expiration of the period of limitations otherwise applicable . . . .

1969, Maryland Laws, Special Session, Ch. 1, ET § 8-103(a).

[8] In 1976, when the General Assembly first granted the Department the right to file a claim for reimbursement against the estate of a deceased, the timing for filing the Department's claim was governed by ET § 8-103(a).

[9] With this amendment, the General Assembly also added a second option for the personal representative to shorten the deadline to two months by mailing notice to the creditors. This option has endured through the subsequent amendments to the statute, *see* ET § 8-103(f)(2), but it is not relevant to the issue before us. In 1992, the General

After eight years of retirement, the clause "first appointment of a personal representative" was pressed back into service when, in 1997, the General Assembly established a separate deadline unique for the Department's claims in the newly added ET § 8-103(f). 1997 Md. Laws 3227 (Vol. V, Ch. 586, S.B. 404). In this new subsection, the Department was given "six months after the date of the first appointment of a personal representative" to file its claim. Once again, the clause "*first* appointment of a personal representative" was synonymous with "*initial* appointment of a personal representative." By qualifying "appointment" with "first," creditors knew that the six-month period would not begin anew if the personal representative was replaced.

That brings us to 2005, when ET § 8-103(f) was amended to its current form, to provide that the Department must file its claim within "6 months after publication of notice of the first appointment of a personal representative." We note that the General Assembly accomplished this amendment by inserting four words—"publication of notice of"—and without deleting a single word.

With the benefit of the legislative history of ET § 8-103, we return to the PR's argument that, for the word "first" to have any purpose or relevance, we must construe subsection (f) as if "first" precedes and modifies "publication." The legislative history shows that the General Assembly knew how to establish the first of the three publications as the trigger date when, prior to 1971, it did just that by placing "first" immediately before

Assembly shortened the limitations period from nine months from the date of death to six months after the decedent's death.

11

"publication." And, it is important to note, this was not a historical anomaly, as the phrase "first publication" has and continues to be used in numerous other statutory contexts.[10]

Moreover, the legislative history shows that the word "first" in "first appointment of a personal representative" has historically been synonymous with "initial." In addition to its historical meaning, this clause has been used elsewhere in the Estates and Trusts Article to the same effect and meaning,[11] as have cases that have construed this clause in

---

[10] *See, e.g.*, ET § 14.5-508(b)(2)(ii) (a claim against revocable trust of decedent must be made "on or before the date that is 6 months after the date of the first publication of" Notice to Creditors of a Settlor of a Revocable Trust); Md. Code Ann. (1975, 2013 Repl. Vol.) Com. Law § 16-502(d) (the "first publication of notice" of a proposed sale of property of a hotel guest as a result of hotel keeper's lien must be at least ten days before the sale); Md. Code Ann. (1980, 2011 Repl. Vol.) Fin. Inst. § 5-612(d)(1) (allowing that an interested party of a banking institution who did not approve of a plan of reorganization may apply to the court for the value of that party's interest "[w]ithin 30 days after the first publication" of the Commissioner of Financial Regulation's notice in the Maryland Register of its approval of the plan); Md. Code Ann. (1992, 2015 Repl. Vol.) Bus. Reg. § 13-105(e) (the rightful holder of trading stamps that trading stamp company fails to redeem must file a proof of claim along with the trading stamps "within 3 months after the first publication of notice" by Secretary of the State of the company's failure to redeem the trading stamps); Md. Code Ann. (2013) Local Gov't § 4-406(d) (requiring that "immediately after the first publication of the public notice" by the administrative officer of municipality of an annexation resolution, the municipality must provide a copy of the notice to the governing body of the county where the municipality is located and with any regional or State planning agency within the jurisdiction); Md. Code Ann. (1996, 2014 Repl. Vol.) Env't § 9-503(d) (the "first publication of notice" of a public hearing before a county "adopts any revision or amendment to its county plan or adopts a new county plan" must be "at least 14 days before the hearing").

[11] *See, e.g.*, ET § 5-207(a)(1) ("Regardless of whether a petition for probate has been filed, a verified petition to caveat a will may be filed at any time before the expiration of 6 months following the first appointment of a personal representative under a will . . ."); ET § 5-207(a)(2)(ii) ("If a different will is offered subsequently for probate, a petition to caveat the later offered will may be filed at a time within . . . 6 months after the first appointment of a personal representative of a probated will."); ET § 8-106(b) (" Subject to the priorities contained in § 8-105 of this subtitle, the personal representative shall pay the funeral

12

other contexts. *See, e.g.*, *Green v. Nelson*, 227 Md. App. 698, 709 (2016) (discussing similar provision in ET § 5-207 and using "initial appointment" synonymously with "first appointment");[12] *Durham v. Walters*, 59 Md. App. 1, 9 (1984). Thus, when the General Assembly left the entire clause intact when it amended ET § 8-103(f), we must presume it did so intentionally, which means that "first" sits where it belongs. And, when the General Assembly chose to amend subsection (f) by adding the four-word phrase "publication of notice of" instead of the five-word phrase "*first* publication of notice of," we likewise presume that the General Assembly did so intentionally.

At bottom, although we strive to avoid statutory interpretations that render words or phrases surplusage, that worthy aspiration must yield to the plain language of the statute, and "we will not rewrite a statute simply to accomplish that objective." *Simpson v. Moore*, 323 Md. 215, 228 (1991) (citations omitted). Here, our interpretation comports with the plain language and grammatical structure of § 8-103(f) as well as its relevant legislative history. In addition, our interpretation is consistent with how "first publication" and "first appointment of a personal representative" are used in other provisions of the Maryland Code.

_____

expenses of the decedent within six months of the first appointment of a personal representative.").

[12] Section 5-207 imposes a deadline for filing a petition to caveat a will of "6 months following the first appointment of a personal representative under a will, even if there be a subsequent judicial probate or appointment of a personal representative." ET § 5-207(a)(1). The qualifying clause beginning with "even if" drives home the point that the "first appointment of a personal representative" means the initial appointment.

The PR's argument regarding the form of the notice in ET § 7-103(b) is similarly unpersuasive. We don't agree that we would be rendering the placeholder for the "Date of first publication" superfluous if we adhere to our interpretation of ET § 8-103(f). That's because the General Assembly long ago rendered that placeholder irrelevant. As shown above, prior to the 1971 amendment, when the trigger date was the "first publication" of notice, the placeholder for inserting the "date of first publication" was relevant. That changed in 1971 when the trigger event changed from the "first publication of notice" to the "first appointment of a personal representative." When that happened, the placeholder became irrelevant, and it remained irrelevant in the subsequent amendments of 1989, 1992, 1997 and 2005.[13] We cannot render superfluous that which the General Assembly had already rendered superfluous, and we will not shirk our obligation to enforce a statute as written merely to breathe relevance into a long-forgotten placeholder on a form.[14]

**JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY REVERSED. CASE REMANDED TO THE CIRCUIT**

---

[13] This would not be the only way in which the form provided in ET § 7-103(b) failed to keep up with the changes made in the statute. *See McIntyre v. Smyth*, 159 Md. App. 19, 36 (2004) (explaining how the form was not amended in 1971 to reflect the change in the definition of "interested person"). We declined to read anything into that omission then, *id.*, just as we decline to do so now.

[14] The Department claims support for its position in our recent decision in *Potomac Riverkeeper, Inc. v. Maryland Dep't of the Env't*, 238 Md. App. 174 (2018). The PR argues that this case is distinguishable and, if anything, supports her position. We agree that there are some meaningful distinctions between the statute at issue here and the one at issue in *Potomac Riverkeeper*, but, on balance we believe that the logic and reasoning set forth in *Potomac Riverkeeper* favors the interpretation we adopt here. However, because our decision rests on the plain meaning of ET § 8-103(f) and is supported by its legislative history, a deep dive into *Potomac Riverkeeper* is unnecessary.

14

**COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENT OF THE ORPHANS' COURT AND REMAND TO THE ORPHANS' COURT FOR AN ADJUDICATION OF APPELLANT'S CLAIM ON THE MERITS. COSTS TO BE PAID BY APPELLEE.**

15